24446.   HORNBUCKLE *v.* NATIONAL FIRE INSURANCE CO.

DECIDED APRIL 24, 1935.

*Leonard Farkas, Fulwood & Fulwood, R. R. Forrester, Walter H. Burt,* for plaintiff.

*Jones, Fuller, Russell & Clapp,* for defendant.

BROYLES, C. J. When this case was here before, this court held that the evidence demanded a finding that the plaintiff had failed to comply with the terms of the iron-safe clause of the fire-insurance policy sued on, and that there was no evidence tending to show that the required inventory was left out of the safe on account of some emergency, or otherwise destroyed or lost, and that the verdict in favor of the plaintiff was unauthorized. 47 *Ga. App.* 762 (171 S. E. 468). Upon the trial now under review the petition was amended to allege a waiver by the insurance company of the plaintiff's compliance with the iron-safe clause, and an estoppel to the setting up of a breach of that clause as a defense to the suit. Upon the second trial the plaintiff, in an amendment to his petition, expressly stated that he was not contending that he complied with the provisions of the iron-safe clause of the policy. Therefore, the only question for our consideration is whether the evidence on the trial now under review sustains the allegations of the amended petition as to a waiver by the defendant of the plaintiff's compliance with the iron-safe clause in the policy. If such a waiver be shown, the defendant would be estopped from setting up the breach of that clause as a defense to the action.

The insurance policy contained the following provision: "This policy is made and accepted subject to the foregoing stipulations and conditions, and to the following stipulations and conditions printed on back hereof, which are hereby specially referred to and made a part of this policy, together with such other provisions, agreements, or conditions as may be indorsed hereon, or added hereto; and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon and added hereto; and as to such provisions and conditions, no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached." Upon the trial the undisputed evidence showed that subsequent to the fire the plaintiff and the defendant signed a "non-waiver agreement," which provided that "any action taken, request made, or any information now or

hereafter received by the defendant in or while investigating and ascertaining the cause of fire, the amount of loss or damage, or other matter relative to the" plaintiff's claim "for property alleged to have been lost or damaged by fire," shall not in any respect or particular change, waive, invalidate, or forfeit any of the terms, conditions, or requirements of the policy of insurance of the defendant held by the plaintiff, or any rights whatsoever of either party to this agreement. "The intent of this agreement is to save and preserve all the rights of the parties and permit an investigation of the claim and a determination of the amount of loss or damage in order that [the plaintiff] may not unnecessarily be delayed in his business, and that the amount of his claim may be ascertained and determined without regard to the liability [of the defendant], and without prejudice to any rights or defense which [the defendant] may have."

The evidence introduced by the plaintiff to show a waiver by the defendant of the iron-safe clause was, in substance, as follows: The plaintiff testified that about the time the policy was issued and prior to the fire, he showed his books to one Parker, the local agent of the defendant and the agent who wrote the policy, and explained to Parker how he kept them, and that Parker said the books were all right. At that time Parker had the insurance policy in his possession. The plaintiff further testified that after the fire he exhibited his books to one McLain, an adjuster representing the defendant, and explained them in detail, and that "McLain told me he thought he would get it straight, that it would be easy, and he thought I would get the money in a little while. I showed him the insurance policy and also the daily sheets. He told me to get the invoices. I did not have some of the invoices. Some of the invoices got burned up and some of them were in the safe, and he told me to get those I did not have. I got them from the wholesale men. He told me he thought he would have the money right away. I got those invoices that he told me to get. I had to go to different wholesale houses to get them. . . It took several weeks to get the invoices just going back and forth, for sometimes I would go there and not find the men I had to see. It is hard to tell exactly what expense I went to in getting up these invoices. My best judgment, I suppose, is something like $50 or $75, or maybe more than that. I finally did assemble the invoices. I

did not write for them, I went after them myself." The foregoing evidence was not sufficient to show a waiver by the defendant of the provisions of the iron-safe clause of the policy; and therefore the defendant was not estopped from setting up as a defense to the suit the plaintiff's non-compliance with those provisions. Under the facts of this case the insured could not act upon oral statements or permissions of the defendant's agents as to things which his policy provided such agents had no authority to grant, unless such statements or permissions were in writing and indorsed on the policy. Especially is this true where, as in this case, the agents did not make such indorsements or agree to do so, and where it does not appear that the oral statements or permissions were expressly authorized by the insurance company or were subsequently ratified by the company. See, in this connection, *Morris* v. *Imperial Ins. Co.*, 106 *Ga.* 461 (4) (32 S. E. 595); *Lippman* v. *Ætna Ins. Co.*, 108 *Ga.* 391 (33 S. E. 897, 75 Am. St. R. 62); *Finleyson* v. *Liverpool &c. Ins. Co.*, 16 *Ga. App.* 51 (84 S. E. 311); *Corporation of Royal Exchange Assur.* v. *Franklin*, 158 *Ga.* 644 (124 S. E. 172, 38 A. L. R. 626).

The cases cited in the brief of counsel for the plaintiff in error are distinguished by their facts from the instant case.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*