### 32818. PENNSYLVANIA THRESHERMEN & FARMERS MUTUAL CASUALTY INSURANCE CO. *v.* TAYLOR.

DECIDED MARCH 3, 1950. REHEARING DENIED MARCH 29, 1950.

*Neely, Marshall & Greene, Edgar A. Neely Jr.*, for plaintiff in error.

*William F. Buchanan, Eugene A. Epting, Mary J. Nelson,* contra.

SUTTON, C. J.   This was an action in the Civil Court of Fulton County by Ross W. Taylor against the Pennsylvania Threshermen and Farmers Mutual Casualty Insurance Company on an automobile insurance policy insuring a 1948 Nash Ambassador automobile which was badly damaged in a collision on January 16, 1948.   This policy contained a provision for collision insurance with a $50 deductible clause.   The defendant denied liability, basing its defense on the ground that the plaintiff was not the owner of said Nash automobile.   The case was tried before a jury, a verdict for $1808 was returned for the plaintiff, and judgment was rendered accordingly.   The defendant moved for a new trial on the general grounds and on three special grounds, and the exception here is to the judgment overruling this motion.   The facts as disclosed by the record will be stated or referred to in the following opinion.

■ In the first special ground of the motion error is assigned on an excerpt from the charge of the court dealing with the burden of proof.   This portion of the charge excepted to is, in substance, to the effect that the burden of proof was on the insured to prove his right to recover by a preponderance of the evidence, and that if the insured had shown to the satisfaction of the jury that the insurance policy was issued and delivered to him, and that he had paid all due premiums thereon, he had proved a prima facie case in these respects, and then the burden of proof would shift to the defendant to show, as it contended, that the insured did not own the automobile when the insurance policy was issued, or at any time subsequent thereto. It is the contention of the insurer that this portion of the charge was confusing and misleading, and erroneously placed the ultimate burden of proof on the insurer.   There was no dispute as to the fact that the policy was issued and delivered to the insured, and that the premiums thereon were paid, and by the provisions of the insurance policy the insured represented that

he was the sole owner of the automobile, except with respect to bailment lease, conditional sale, mortgage, or other encumbrance, and unless the interest was as represented the insurer was not obligated under the contract. The primary contention of the insurer was that the insured did not own the automobile. Under the contract of insurance, proof of ownership of the automobile by the insured was essential to sustain his action, and the ultimate burden of proof was upon him to show this fact to the satisfaction of the jury by a preponderance of the evidence, but upon a prima facie showing on his part in this respect, the burden of producing evidence to show that he was not the owner of the automobile, as distinguished from the ultimate burden of proof, was on the insurer. In this connection see Code, §§ 38-103, 38-104; *Morris* v. *Imperial Ins. Co. Ltd. of London,* 106 *Ga.* 461, 463 (32 S. E. 595) ; *American Insurance Co.* v. *Peebles & Co.,* 5 *Ga. App.* 731, 733 (64 S. E. 304) ; *National Union Fire Ins. Co.* v. *Tatum,* 56 *Ga. App.* 740, 741 (193 S. E. 799). The trial judge dealt at some length in his charge with the ultimate burden of proof, in addition to what he said in the portion of the charge excepted to, and his charge in this respect as an abstract principle of law was correct, and should have left a clear impression upon the minds of the jury to the effect that at all times the ultimate burden of proof was on the insured to show a right of recovery by a preponderance of the evidence. His charge as to the shift in the burden of producing evidence as to the ownership or non-ownership of the automobile was also correct as an abstract principle of law. There is nothing to indicate that the jury was confused or misled by his charge in these respects; and that portion of the charge excepted to in regard to the burden of proof is not error for any reason assigned.

■ The second special ground of the motion is an assignment of error on the following excerpt from the charge of the court: "There is some evidence before you to the effect that the plaintiff did not return the property sued for, that is, did not return the 1948 Nash for taxes to the City of Atlanta and Fulton County. I charge you that the failure to pay taxes on property does not of itself deprive a party of his title to the property if he in fact had title to it. However, you may consider the failure of the plaintiff to return the property for taxes, if you find that

he did fail to return said property for taxes, as a circumstance illustrating whether or not the plaintiff actually owned or had title to the automobile in question." No error is shown by this part of the charge.

■ In the third and last special ground of the motion error is assigned on the following part of the charge of the court: "Gentlemen, if you determine that Mr. Taylor, the plaintiff, owned the automobile on the date the policy was changed to cover this automobile, that is, on November 22, I believe, 1947, and owned it continuously up until the date of the wreck, then it would be your duty to determine how much plaintiff would be entitled to recover. The policy provides that it shall pay for damages for collision the actual cash value of the automobile less $50, or with $50 deductible; so, you would determine from the evidence what was the value of the automobile immediately before the wreck, and immediately after the wreck, and when you arrive at that figure, then you would deduct from that figure $50 which the policy does not cover. I mean it does not insure the full actual cash value, but the actual cash value less $50. And you would return a verdict in favor of the plaintiff for that difference." The substance of this excerpt is, that if the jury determined that the insured did own the automobile within the terms of the policy, the measure of damage would be the difference in the actual cash value of the automobile immediately before and after the collision, less $50, and this part of the charge was not confusing, misleading, or argumentative, as contended by the plaintiff in error. No error is shown by this ground of the motion.

■ The remaining issue is whether the verdict was authorized by the evidence, and this includes the question of whether the amount of the verdict was authorized, one of the contentions of the insurance company being that the verdict was excessive. There was evidence showing that the insured bought a 1946 Nash automobile from John Kendrick and Company, a business in which he owned a 49% interest, that he traded this automobile to the company for a 1947 Nash automobile, and then in November, 1947, he traded the 1947 Nash automobile for the 1948 Nash Ambassador automobile here involved, and he considered and used these automobiles at all times as his own, and

about the middle of January, 1948, he sent the 1948 Nash to the Kendrick Company in Athens for servicing, and it was being returned to him in the afternoon on January 16, 1948, by John Kendrick, personally, after being serviced, when it collided with another automobile and was damaged as herein sued for, and Kendrick received personal injuries which caused his death that night. It also appears that this automobile was insured by the defendant company in the name of the plaintiff at the time of the wreck and that it had been so insured since the time he acquired it on November 22, 1947, and that prior to the time of the collision a bill of sale for it had been executed for delivery to the plaintiff, and that it had been registered in the name of the plaintiff. The evidence also includes a sworn statement made by the plaintiff to an insurance adjuster for the defendant shortly after the collision, to the effect that he did not own the automobile, and the plaintiff's property-tax return indicated that he had not returned the automobile for taxation. The plaintiff lived in Atlanta and was employed here, but the John Kendrick & Company, a corporation, was located in Athens, Georgia, and on the following day after the automobile was wrecked he went to Athens, and after making an investigation there and after talking to an auditor for the company, he discovered that the 1947 Nash for which he traded his 1946 model was carried on the records of the John Kendrick & Company as the property of the company, and that the 1948 Nash Ambassador for which he traded was carried on the records in the same way; and the plaintiff testified that he did not know of this status before, and he also discovered that the company was involved financially, which he did not know before; and that he heard there probably would be lawsuits on account of the wreck in question. He explained in his testimony on the trial of the case that he was very much confused by all of these things and by the death of John Kendrick and that while in this state of confusion he made a written statement to an agent of the insurance company to the effect that he was not the owner of the 1948 Nash automobile. But he further testified that he bought and paid for the 1946 Nash, traded it for the 1947 model, and then traded that for the 1948 Nash, and that he at all times considered each of these cars as his personal property and treated and used them as such, as

already mentioned. The insurance policy provided: "The words 'actual cash value' as used above mean the actual cash value of the insured property at the time of the injury to or destruction of the property, or the cost of its suitable repair or replacement not in excess of such cash value, and loss shall be ascertained or estimated accordingly with proper deduction for depreciation however caused. . . The company may repair or replace the property so injured or destroyed by such means as it may select, or, at the option of the company, pay to the insured in money the full amount of such loss so determined, subject to such deduction, if any, as may be applicable thereto." It does not appear that the insurance company made any attempt to exercise any option in respect to the loss at any time, but on the contrary denied any liability whatever.

Under the evidence, the highest cash value of the automobile just prior to the collision was $2600, and the lowest estimate of its cash value immediately thereafter was $300. According to his amended petition the plaintiff alleged that the automobile was worth $2600 before its was wrecked, and $400 after it was wrecked, but he also alleged that he sold the automobile for $742 after it was wrecked. When the amount for which the automobile was sold after the wreck, $742, is deducted from the highest proved cash value immediately before it was wrecked, $2600, the balance or difference is $1858, and the $50 deductible under the provisions of the insurance policy leaves $1808, the amount of the verdict. The evidence shows that whatever loss resulted from the collision in respect to the automobile was sustained by the plaintiff and not by John Kendrick & Company. There was other evidence pro and con on the question of the ownership and value of the automobile. The ownership of the automobile and the amount of damage were questions of fact to be determined from the evidence by a jury, and under the evidence a verdict for $1808 for the plaintiff was authorized.

■ The trial judge did not err in overruling the motion for a new trial.

*Judgment affirmed. Felton and Worrill, JJ., concur.*