## BRADY *v.* JOINER.

1. It is lawful to imprison at night, or at any other appropriate time, one who has been legally sentenced to labor upon public works.

2. A municipal corporation may lawfully contract with the proper county authorities for the use of a cell or room in the county jail as a place for confining municipal prisoners, and their imprisonment therein is not rendered illegal merely because the sheriff or jailer locks the outside door of the jail and keeps the key thereto, if in point of fact the marshal, he being the municipal officer having charge of such prisoners, can at all times readily obtain access to them, and there is no real interference with this officer's custody and control of their persons and movements.

3. Where under such circumstances a person so imprisoned sues out a writ of habeas corpus against the sheriff, alleging that the latter is illegally restraining the petitioner of his liberty, and the respondent, without objection, sets up in his answer as cause for the imprisonment sentences imposed upon the petitioner by the municipal court, and the case is then tried upon the issues thus presented, it stands upon substantially the same footing as if the writ had been directed to the marshal, and the decision of it should turn upon the question whether or not he can, upon the facts proved, lawfully imprison the petitioner.

4. A sentence imposed by a municipal court, and on certiorari affirmed by a judgment of the superior court, which is in turn affirmed by a judgment of the Supreme Court, is binding and conclusive upon the person sentenced, and, as to him, in effect lawful, whether it was so in the first instance or not. This is true though in the superior court the judgment of affirmance resulted from a dismissal of the certiorari, and in the Supreme Court a like judgment followed a dismissal of the writ of error, without a hearing of the case in either court upon its actual merits.

5. Accordingly, where in a habeas corpus case of the nature above indicated the sheriff's answer set up, and he duly proved, the existence of seven sentences of the municipal court, four of which were, for the reason stated in the last note, binding upon the petitioner, whether originally so or not; and it also appeared that these sentences had not been served out, it was error to discharge the prisoner, even if the three remaining sentences were unwarranted by law and void. Whether the sentences last referred to were or were not, in the present case, legal, is not now decided.

6. The ordinary, by whom the habeas corpus case was tried, erred in his judgment, and the superior court on certiorari rightly so held.

Submitted April 17, — Decided May 19, 1897.

Certiorari—habeas corpus.   Before Judge Hart.   Laurens superior court.   January term, 1896.

*Preston &. Ayer* and *R. C. Jordan*, for plaintiff.
*A. F. Daley, P. L. Wade* and *I. S. Chappell*, for defendant.

LUMPKIN, P. J.    A writ of habeas corpus was sued out before the ordinary of Laurens county by J. S. Brady, who alleged in his petition that he was unlawfully imprisoned in the jail of that county by W. J. Joiner, the sheriff and jailer thereof, under a sentence, or sentences, imposed upon the petitioner by the mayor and council of the city of Dublin.    The ordinary, upon hearing the writ, rendered a judgment discharging the prisoner, and this judgment was, on certiorari, reversed by the superior court.    We will briefly discuss the questions involved, stating in connection with each such facts as may be necessary to an understanding of the rulings we have made in this case.

1. The plaintiff in error was, by the municipal court, adjudged guilty of several violations of an ordinance forbidding the keeping by any person, within the corporate limits, of spirituous or other liquors for the purpose of illegal sale.    In each case he was sentenced to labor on the public works, unless he paid a prescribed fine.    The fines were not paid ; and in carrying into effect the sentences of the municipal court, the prisoner was kept confined at night in a cell of the common jail of Laurens county.

Upon the assumption that the sentences were legally imposed, and passing, for the present, the question as to whether or not it was lawful to use the jail as a place for the safe-keeping of the prisoner, when not actually engaged in laboring upon the public works, we lay down as our first proposition that it was undoubtedly lawful to keep the prisoner confined at night, or at any other appropriate time, until his sentences had been served out.    This is so obviously true, that there seems to be no occasion for reasoning on the subject.    It is hardly to be supposed that chain-gang prisoners, if set at liberty at the close of a day's labor, would report for work on the ensuing morning.    Plainly, such people must be safely kept at night, so as to prevent escapes ; and what has just been said applies as well to any other time, such as the Sabbath, days when the weather

is inclement, and other occasions when the prosecution of the public work is necessarily suspended.

2. As to the place for so confining municipal prisoners, we see no reason why the city authorities may not contract with the county authorities for a room or cell in the county jail to be used for this purpose. Certainly, the city may have its own guard-house, which it could either build or rent, as might be expedient; and if, adopting the latter alternative, its officials see proper to secure a portion of a building exactly adapted to the use in question, no good reason occurs to us why the fact that the portion so obtained constituted a part of a county prison could be, in a legal sense, objectionable.

It was insisted in the present case that the sheriff was the real custodian of the plaintiff in error during his confinement in the jail, because that officer locked the outside door of the jail and kept the key thereto. Accordingly, it was urged that the imprisonment was unlawful because, under the facts recited, the sheriff, and not the marshal, was the real keeper of the prisoner. It further appeared, however, that the room in which the prisoner was confined was under the exclusive control of the marshal, and that, under the arrangement with the sheriff, the marshal could at any and all times obtain access to the jail, and that there was no real interference by the sheriff, or any other county official, with the marshal's complete custody and control of this prisoner's person and movements. We therefore think the judge of the superior court properly held that the plaintiff in error was, in the strictest sense, the prisoner of the municipality, and not of the county.

3. The writ of habeas corpus ought to have been sued out against the marshal. In point of fact, as already seen, it was sued out against the sheriff. That officer, without objection on the part of the petitioner or his counsel, set up in his answer, as cause for the imprisonment, the sentences imposed by the municipal court, and the record shows conclusively that the case was tried by the ordinary upon the issues thus presented. The case, therefore, stood upon substantially the same footing as if the writ had been directed to the marshal, and the real question for determination was whether or not, upon

the facts as they existed, he could lawfully imprison the petitioner. This question was necessarily passed upon and adjudicated, and thus the petitioner secured ·all that he could in any event have demanded. The case might have ended when it appeared that the sheriff was not himself really restraining the petitioner of his liberty, and certainly no harm resulted to the petitioner when the question of the marshal's right to keep him in prison was made the subject-matter of investigation. On the contrary, the petitioner was thus permitted to go into an issue not presented by his petition, and to urge in his behalf matters as to which he was not entitled to any adjudication. .

4, 5, 6. What has been said above rests upon the assumption that the sentences under review before the ordinary were lawfully imposed. There were, in all, seven of these sentences, and the record discloses that four of them had, on certiorari from the municipal to the superior court, been affirmed, and also that the judgment of the latter court had, in its turn, been affirmed by a judgment of this court. It is true that the judgment of affirmance rendered in the superior court resulted from a dismissal of the certiorari, that in this court a like judgment followed a dismissal of the writ of error, ·and that there has never been a review of the original cases upon their actual merits, in either the superior or the Supreme Court. Notwithstanding all this, however, the judgments of affirmance rendered by these courts respectively are valid and binding upon the complaining party. An affirmance is an affirmance, and can be nothing else, no matter how the same may be reached; and the conclusion is inevitable that, whether the four sentences now under consideration were or were not, in the first instance, legal and binding, they must now be so regarded, the record in each case being on its face regular, and the sentences having become conclusive, by operation of law, because of the failure of the plaintiff in error to take the proper steps to have the same reviewed.

Inasmuch, therefore, as the plaintiff in error was being detained under lawful and binding judgments, the ordinary erred in discharging him, and the superior court very properly cor-

· 13

rected the error thus committed.   Whether the sentences which have not been reviewed on certiorari were lawful or not, is not now decided.   The record conclusively shows that the existing imprisonment is legal, and that the detention of the prisoner until he shall have served out the four binding sentences will be lawful and proper.   At the end of that period, the question of the legality of the other three sentences can be raised and passed upon, if it should then be necessary.

*Judgment affirmed.   All the Justices concurring.*