18710. CONTINENTAL LIFE INSURANCE CO. *v.* WELLS.

DECIDED APRIL 10, 1928.

*Cumming & Harper,* for plaintiff in error.

*Hammond & Kennedy,* contra.

LUKE, J. In the first count of his petition John N. Wells sued Continental Life Insurance Company for $3750 alleged to be due him as the insured under an accident-insurance policy, and for 25 per cent. damages and $375 attorney's fees, alleged to be due because of bad faith on the part of the insurer in refusing to pay the loss. The trial resulted in a verdict and judgment against the defendant on the first count, for $4125, and it excepted. Under the record there is no occasion to consider the second count.

In paragraph 3 of his petition Wells alleged that he was a passenger on a passenger-train of the Georgia and Florida Railroad,

traveling from Augusta to Valdosta; that "when said train was nearing the City of Augusta the car in which he was riding was disabled, and, as a result of said disablement of said passenger-car, plaintiff was thrown from said car and in the path of the wheels thereof," and had his left hand practically severed from his body, it "being necessary to amputate said limb immediately." The defendant demurred to this paragraph of the petition because it failed to set out "in what manner the car in which plaintiff was riding was disabled, or in what manner such disablement resulted in plaintiff's being thrown from the car." To meet this demurrer the petition was amended by adding the following: "The said train was disabled in that two of the brakes on the engine and cars, while the said train was in motion, were applied with extraordinary force upon the cars, causing the train to come to an immediate stop, shaking and disabling said car and throwing plaintiff therefrom." The company renewed its demurrer to the petition as amended, the court overruled the demurrer, and exceptions were duly taken.

The contract of insurance provides that John W. Wells is insured against injuries resulting from external, violent, and accidental means, "by the wrecking or disablement of any railroad passenger car . . in or on which the insured is traveling as a fare-paying passenger." In his brief, counsel for the insurance company insists upon the following ground of the demurrer: The petition fails to show in what manner the car in which the plaintiff was riding was disabled. Reduced to its last analysis, the petition as amended averred that the "disablement" was the immediate stopping and shaking of the car caused by the violent application of the two brakes on the engine and cars.

Was the immediate stopping and shaking of the car, resulting in throwing Wells therefrom, a "disablement" within the meaning of the insurance contract? In the interpretation of contracts, "words bear their usual and common signification" (Civil Code (1910), § 4268 (2)), but "if the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking is generally to be preferred." Civil Code, § 4268 (4). "If a policy of insurance is so drawn as to require interpretation, and is fairly susceptible of two different constructions, the one will be adopted most favorable to the insured;" and "policies of insurance will be liberally construed in favor of the object to be accomplished,

and conditions and provisions therein will be strictly construed against the insurer, as they are issued upon printed forms, prepared by experts at the insurer's instance, in the preparation of which the insured has no voice." *Johnson* v. *Mutual Life Ins. Co.*, 154 *Ga.* 653 (115 S. E. 14), and cit.  See also *State Mutual Life Ins. Co.* v. *Forrest*, 19 *Ga. App.* 302 (91 S. E. 428), and cit. "Where a contract of accident insurance, prepared by the insurer, contains a word susceptible of being construed, without violence, as having more than one meaning, the meaning most favorable to the interests of the insured must be given it." *Great Eastern Casualty Co.* v. *Blackwelder*, 21 *Ga. App.* 586 (94 S. E. 843).

It will be observed that the contract of insurance uses the words "wrecking or disablement." Evidently these words were not used synonymously, and evidently they were used to cover different situations, since "wrecking" means "to destroy or seriously damage," and since the word "disablement" has a broader and a different meaning. Webster's Dictionary defines "disablement" as "deprivation of ability; incapacity." The same dictionary defines "disable" as "to render unable or incapable; to destroy the force, vigor, or power of action; to deprive of competent physical or intellectual power; to make incompetent or unfit for service; to impair." Century Dictionary defines "disable" as "to render unable; deprive of ability, physical or mental; weaken or destroy the capacity of; cripple or incapacitate." The Funk and Wagnalls Standard Dictionary defines "disable" as "to render physically or mentally incapable of proper or effective action; cripple; impair." Of course, the car would have been disabled if an axle had broken, or a wheel had come off; but, in view of the foregoing rules of construction, and the varied definitions of the word "disable," we are certain that it can not be so limited here. For a short time, at any rate, the car was prevented from properly performing its function of carrying passengers,—was rendered "incapable of proper or effective action." The petition was good as against the special demurrer.

The plaintiff in error insists also upon the general grounds of the motion for a new trial. John N. Wells testified: "I was riding the train, and got up to go back to the toilet, and found the door locked; and, as I turned to go back, the train gave a violent jerk and the brakes screeched and threw me back, and I fell out of the door. When I found what had happened to me I had lost my

arm, cut off under the railroad train. I was lying beside the track. The jerk was a terrible one, and it threw me out of the car. All the brakes looked like they screeched, and the whole car looked like it was coming to pieces, and I was thrown on backwards out of the door. I was thrown by such a hard jerk I did not have time to catch, though I tried. I couldn't say whether I fell between the cars or not. I was unconscious. The accident happened between Gwinnett-street crossing and Delaigle-avenue crossing. . . During the time the train was making that jerking and convulsive movement I was unable to remain on it. It jerked me down."

The evidence for the company was to the effect that the brakes were in good order; that nothing unusual occurred on the night in question in regard to the train, engine, or cars; that the disappearance of Wells from the car was not noticed for some time after it occurred; and that the brakes were not applied between Gwinnett-street crossing and Delaigle Avenue.

There was evidence to sustain the plaintiff's case, and the jury saw fit to accept that evidence as the correct version of the occurrence. In other respects than herein indicated, there is no controversy as to the sufficiency of the evidence to make out the case. We are bound by the jury's verdict, and hold that the court did not err in overruling the motion for a new trial for the reason here insisted upon.

The evidence did not show bad faith on the part of the company in refusing to pay the loss, and the legal questions involved were sufficiently doubtful and important to justify the insurer in litigating the matter. Civil Code (1910), § 2549; *Phœnix Ins. Co.* v. *Clay,* 101 *Ga.* 331, 336 (28 S. E. 853, 65 Am. St. R. 307) ; *Mass. Benefit Life Assn. Co.* v. *Robinson,* 104 *Ga.* 256 (12) (30 S. E. 918, 42 L. R. A. 261) ; *Morris* v. *Imperial Ins. Co.,* 106 *Ga.* 461 (32 S. E. 595) ; *Empire Life Ins. Co.* v. *Allen,* 141 *Ga.* 413 (4) (81 S. E. 120). Therefore the judgment is affirmed, with direction that the plaintiff write off from the judgment the part of it which is in excess of the amount recoverable under the policy. Apparently the jury allowed ten per cent. as attorney's fees. This was improper.

*Judgment affirmed, with direction.  Broyles, C. J., and Bloodworth, J., concur.*