874

## 26878. TATE *v.* NATIONAL SURETY CORPORATION.

Decided October 17, 1938. Adhered to on rehearing December 20, 1938.

*E. S. Taylor, Maddox & Griffin*, for plaintiff.
*Wright & Covington*, for defendant.

Felton, J.   This is an action against the surety on the bond of a sheriff for injuries sustained by a prisoner confined in a county jail when he was "kangarooed" by other prisoners confined therein.  His petition alleged that the jailer and deputy sheriff in charge of said jail knew of the practice of "kangarooing," and knowingly allowed the injuries to be inflicted upon him.   The evidence adduced upon the trial of the case showed that the prisoner was incarcerated in the county jail for the violation of a municipal ordinance; that his arrest was by the chief of police and other officers of the municipality, and that his incarceration was by the municipal police force, by whom he was turned over to the jailer named in the petition.   The evidence further showed that the jailer knew that the prisoners confined in said jail contemplated "kangarooing" the plaintiff, and that they did so with his consent. Upon the completion of the evidence, the court granted a nonsuit, and error is assigned on this ruling.

We think that the granting of a nonsuit was proper.   In the first place, the duties of a sheriff are fixed by law (Code, §§ 24-2813, 77-110), and the liability of his bond is likewise fixed by law.   Code, § 24-2805.   It has been held in *Brady* v. *Joiner*, 101 *Ga.* 190 (28 S. E. 679), that a municipal corporation may legally contract for the use of the county jail, but there is no allegation or any evidence that the municipality in the instant case ever made any such contract, nor is there any allegation or evidence that the plaintiff was ever the prisoner of the sheriff, or that his incarceration was not by some private arrangement made with the jailer by the arresting officers.   As we view it, if such a contract is made with the county authorities by the municipality, the sheriff's duties will be increased as to prisoners delivered to his jail by the municipal officers, but we doubt that the risk of the surety could be increased by such a contract.   The law of suretyship is stricti juris (Code, § 103-103), and we do not think that the liability of

the bond of the sheriff can be increased beyond the limits of the original undertaking. Notice to the surety and a ratification by it might change the situation, but nowhere in the petition or evidence does it appear that the surety ever knew of the practice of putting municipal prisoners in the jail in charge of the sheriff, nor does it appear anywhere that it ever intended to become bound as to municipal prisoners. Code, § 77-9902, while not directly in point, by implication gives the sheriff a right to refuse to receive any prisoner who is not charged with or guilty of an indictable offense, in that the only penalties provided therein are for the refusal to receive persons charged with or guilty of indictable offenses. If there is no duty on the sheriff to receive a municipal prisoner, who is not charged with an indictable offense, then it naturally follows that there is no liability on the bond of the sheriff to such municipal prisoner who is received by the sheriff or his jailer outside of and beyond his statutory duty. The law making the bond of the sheriff liable for the acts of his jailer would not make the bond liable in this case, because the above-cited Code section includes jailers and all other officers, and where there was no duty on the county jailer to receive the municipal prisoner, there would be no liability either on the bond of the sheriff or the jailer under the facts of this case.

The fact that the legislature provided that a jailer is not bound to receive a United States prisoner but that if he does it shall be under like penalties and subject to the same action as in the case of prisoners committed under authority of the State (Code, § 77-106), confirms our view, because, in the absence of this Code section, there would be no liability on the part of a jailer for mistreatment of a United States prisoner, who is a prisoner a jailer is not required to receive.

While the Code, § 24-2812, makes sheriffs liable for the misconduct of jailers, the misconduct referred to is a breach of some duty arising out of official capacity. It does not mean that the sheriff or his bondsman would be liable for an assault by the jailer upon some person on the streets. The oath of a jailer is that he will perform the duties of jailer, and will humanely treat prisoners who may be brought to the jail and not suffer them to escape by negligence or inattention. The jailer's duty, under his oath, is to prisoners required to be received by the sheriff. The fact that the

jailer owed the municipal prisoner a duty, under general law, not to injure him or place him in a position where he would be injured, would not render the sheriff liable, nor the surety on the sheriff's bond. We think that the sheriff might have been liable if he had been charged with the same acts as the jailer, but the duties of a sheriff cover a wider range than the jailer's. The sheriff's duty as an officer is to prevent assaults upon *all* persons if he can reasonably do so. As an officer the jailer owed no duty to the municipal prisoner. There was no evidence that the jailer was also a deputy as alleged in the petition.

The court did not err in granting a nonsuit. The orginal judgment is adhered to on re-hearing and the foregoing opinion is substituted for the original opinion.

*Judgment affirmed. Stephens, P. J., concurs. Sutton, J., concurs in the judgment.*