35870.   JOHNSON *v.* U. S. FIDELITY & GUARANTY CO.

Decided February 13, 1956.

*Clower & Anderson,* for plaintiff in error.

*Wright, Rogers, Magruder & Hoyt,* contra.

QUILLIAN, J. The petition set forth a cause of action, unless the plaintiff's loss was not covered by the policy of insurance issued him by the plaintiff. The loss was clearly one against which the policy covered, if not excluded by Exclusion (d) quoted in the foregoing statement of fact.

There is no question but that a deputy sheriff occupies the dual capacity of public officer and servant of the sheriff under whom and by whose appointment he serves, a sort of hybrid status.

The Supreme Court has held that for the purposes of being paid benefits under the County Employees Pension Act of 1937, a deputy sheriff is not to be regarded as an employee of the county but as the sheriff's employee. *Drost* v. *Robinson,* 194 *Ga.* 703 (22 S. E. 2d 475).

The decision, of course, is authoritative because of being the pronouncement of our Supreme Court, and moreover it is a sound and logical holding.

Not at all in conflict with *Drost* v. *Robinson,* supra, there are holdings that a deputy sheriff is likewise a public officer. *Hartshorn* v. *Bank of Gough,* 17 *Ga. App.* 483 (1) (87 S. E. 720) the opinion written by the master hand of the illustrious and lamented Chief Justice Russell holds: "(1) There is in this State such an office as deputy sheriff; and there may be a de-facto deputy sheriff." The same principle is recognized in *Carter* v. *Veal,* 42 *Ga. App.* 88 (2) (155 S. E. 64), "Since, under section 259 of the Civil Code of 1910, 'no person shall hold, in any manner whatever, or be commissioned to hold at one time, more than one county office, except by special enactment of the legislature heretofore or hereafter made', and no commissioned officer shall be a 'deputy for any other commissioned officer, except by such special enactment,' a person commissioned as coroner of a county can not afterwards during his term be legally commissioned as a deputy sheriff of the county, in the absence of the authority of a special legislative enactment; and where, in the absence of such authority, a person, after having been commissioned as coroner and during his term, was appointed and commissioned a deputy sheriff for the county, his appointment and commission as deputy sheriff was illegal, and his official status was that of coroner only; and his levy as coroner of an execution against several defendants, one of whom was the sheriff of the county, was not illegal on the ground that the execution was levied upon the property of the sheriff by one of the sheriff's deputies."

Again in *Gay* v. *Healan,* 88 *Ga. App.* 533 (77 S. E. 2d 47) it is held: "If a petition sets forth a cause of action under any theory, it is not subject to dismissal on general demurrer. *Hall* v. *John*

*Hancock Mutual Life Ins. Co.*, 50 *Ga. App.* 625 (2) (179 S. E. 183). While a deputy sheriff is not an employee of the sheriff, but is an employee of the county wherein he serves, and is merely appointed by the sheriff (Code § 24-2811), and while the sheriff is liable only for the official acts (that is acts virtute officii or colore officii) of the deputy (Code § 24-201); *Culpepper* v. *U. S. F. & G. Co.*, 199 *Ga.* 56 (33 S. E. 2d 168), and while under such rules of law the sheriff is not personally liable for the negligent acts of his deputy which acts are in no way connected with the performance of his official duties, and while, under the foregoing rulings, the allegations of the petition respecting Powell being an employee of Gay, and asserting liability of Gay for the acts of Powell on the theory of respondeat superior, are not sufficient for that purpose—the petition does allege a cause of action based on the act of Gay, as an individual, in furnishing to Powell, as another individual, known by Gay to be a reckless and dangerous driver of automobiles, an automobile which was a dangerous instrumentality, particularly in the hands of one such as Powell was alleged to be, in that said automobile a Ford, was equipped with a too-powerful motor, a Cadillac motor which made the same difficult to control, etc."

He is not an employee in the sense recognized in *City of Macon* v. *Whittington*, 171 *Ga.* 643, 646 (156 S. E. 674) in which the language of *Marlow* v. *Mayor &c. of Savannah*, 28 *Ga. App.* 368 (110 S. E. 923) is approved and quoted. "The term 'employee' in section 2 (b) of the workmen's compensation act (Ga. L. 1920, p. 167), which provides that 'employee' shall include 'every person . . . in the service of another under any contract of hire', etc., does not apply to a policeman of a municipality." The decision referred to was, of course, rendered prior to the enactment of the amendment of the workmen's compensation law under which certain municipal functionaries occupying the dual relationship to the municipality of officers and servants are for the purpose of the compensation law treated as employees. The language is quoted here for the purpose of illustrating that public officers are not included in the general category of employees of the government they serve or their superior officer who is vested with the authority to direct their official activities.

The deputy sheriff is not a servant within the common acceptation of the word as applied by our laws generally.

And in *Culpepper* v. *United States Fidelity &c. Co.*, 199 *Ga.* 56 (33 S. E. 2d 168), and *Gay* v. *Healan*, supra, it is held that a sheriff is not liable, as the deputy's employer, for the negligence of the latter while operating an automobile in the discharge of his official duties.

Those decisions hold that the sheriff is liable for the misfeasance or malfeasance of his duty in the performance of his office, but is not liable for torts committed by the deputy wholly disconnected with the functions of their office. The language of the Supreme Court in *Culpepper* v. *United States Fidelity &c. Co.*, supra was "2. A cause of action against a deputy sheriff when sued on his official bond, together with his surety thereon, is shown only if the harmful act was done by virtue of or under color of office. No liability thereon attaches for personal malfeasance of the officer, although done when en route to serve a jury summons."

Similar holdings are found in *Goforth* v. *Fidelity & Cas. Co. of New York*, 80 *Ga. App.* 121 (55 S. E. 2d 656); *Tate* v. *National Surety Corp.*, 58 *Ga. App.* 874 (200 S. E. 314).

The deputy is the sheriff's employee only in the sense that the sheriff has the power to appoint and discharge him, and is also vested with legal authority to direct and regulate his conduct in reference to the discharge of his official duties. The duties of the deputy sheriff are defined by statute and the sheriff can require him to do and direct the manner in which he does only his prescribed duties. Beyond that the sheriff has no authority over him. (Code § 24-2804).

The deputy sheriff's relation to the sheriff is similar and in principle identical with that of a law assistant or court reporter to the judge.

A law assistant of this court, selected by the court, is assigned a particular judge whose orders in reference to the work required of him under Code (Ann. Supp.) § 24-3508 he must obey. In a narrow sense the law assistant is, like the deputy sheriff, an employee of the official under whom he serves. A court reporter is as to all of his official duties defined by Code § 24-3101 bound to obey the judge of the superior court, and is certainly as to those duties, an employee of the judge. But in the general acceptance and usual application of the words neither law assistant, court reporter, nor deputy sheriff is a servant or employee of the officer who controls and directs his official conduct.

A deputy sheriff who is an employee of the sheriff in that he must obey the directions of the sheriff as to matters pertaining to the proper discharge of his official duties, and who may be employed or discharged by the sheriff, is still not an employee of the sheriff in the sense in which the word is usually used and according to the customary signification given it.

The cardinal rule of construction to be applied in the interpretation of contracts is to ascertain the intention of the parties. One of the principal phases of such consideration is to arrive at the meaning the parties themselves attached to the words and phrases used in the contract to express their intention. Sometimes from the contract itself or the dealings between the contracting parties the signification given to a word by them may be ascertained with a satisfactory degree of certainty. But when the contract is not explanatory of words or phrases contained in it, and no light is shed upon the subject by previous dealings of the parties to the contract, the only safe course is to follow the rule pronounced in Code § 20-704 (2), "Words generally bear their usual and common signification; but technical words, or words of art, or used in a particular trade or business will be construed, generally, to be used in reference to this peculiar meaning. The local usage or understanding of a word may be proved in order to arrive at the meaning intended by the parties."

This rule is applicable in interpreting insurance policies and our courts use it in conjunction with the rule that the policy of insurance like other contracts is construed most strongly against the party who prepares it. The rules are laid down in *Continental Life Ins. Co.* v. *Wells,* 38 *Ga. App.* 99 (142 S. E. 900).

In the construction of a contract another logical rule is useful in divining the intentions of the parties. The rule is that the background of the contract and circumstances under which it was entered into, and particularly the purpose for the particular clause to be construed must be considered.

The evident purpose of the clause contained in "exclusion (d) of the contract" was to prevent the overlapping of risk against which different types of insurance policies furnish coverage. Manifestly, the insurance company wished to prevent, and employed the clause mentioned for the purpose of preventing, the risk insured against under the automobile liability policy from

furnishing coverage for employees of the insured customarily protected by insurance obtained by the employer, either for himself or in behalf of his employees. Such insurance is a master policy to the employer, certificates being issued to employees insuring them against death or disability arising from causes not compensable under the Workmen's Compensation Law. Another type is that issued to the employer to protect him against the claims of his employees arising under the Workmen's Compensation Law.

The intention of the defendant insurance company in the present case to avoid the overlapping of the automobile indemnity issued to the plaintiff and insurance coverage of the types above referred to is clearly evinced by the phrase contained in Exclusion (d) reading "(d) Under Coverages A and C; bodily injury to or sickness, disease or death of any employee of the insured while engaged in the employment other than domestic, of the insured or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law." Injuries to domestic servants are not compensable under the Workmen's Compensation Law, unless the employee and the employer voluntarily elect to be bound by its provisions. Code § 114-107.

The insurance company undoubtedly reasoned well, that if the coverage of one type of policy overlapped that of another, clients would only buy the one type and thus materially diminish the volume of business the company would reasonably expect to write.

Certainly, neither the plaintiff nor the insurance company contemplated that the deputy sheriff would be insured by the sheriff under any of the types of insurance that employers ordinarily procure to furnish coverage for death or disability of their employees.

This is true because the underlying purpose of employers obtaining either the group policies or furnishing coverage for their employees generally and the policies they obtain in compliance with the Workmen's Compensation Law is not usually altruistically inspired by the master's concern for the protection of the servant, but rather as a prudential measure employed by the master to escape liability for claims for damages or compensation on account of claims that the death or disability of employees arose as a consequence of their employment.

Since we have seen the deputy sheriff is the employee of the sheriff only in relation to his official duties, it is reasonably certain that neither the plaintiff nor the defendant insurance company regarded him as an employee of the class who would be insured against injury or death under some other form of insurance policy issued to the sheriff. Nor is there any question that the deputy sheriff would not be an employee of the sheriff covered under a policy issued the sheriff under the Workmen's Compensation Law. *City of Macon* v. *Whittington,* supra.

Contracts are to be so construed as to accord to the parties the right that each intended to give to the other. Restrictive clauses should not be extended by interpretation by imposing conditions not contemplated when the agreement was entered into.

A better reason for holding the exclusion clause of the contract had no application to any employees of the plaintiff except his personal employees was that the contract shows on its face that it was issued to him in his personal capacity and not in his official capacity as sheriff. *Bowden* v. *Eubanks,* 57 *Ga. App.* 414 (195 S. E. 582).

It is apparent that the exclusion clause was not intended by either the plaintiff or the defendant to apply to the deputy sheriff.

The plaintiff's right of recovery was not affected by the provision of "Exclusion D." The petition set forth a cause of action and the trial judge erred in sustaining the general demurrer.

*Judgment reversed. Felton, C. J., and Gardner, P. J., concur. Nichols, J., disqualified.*