## 55048. POE v. FOUNDERS LIFE ASSURANCE COMPANY OF FLORIDA et al.
## 55049. FOUNDERS LIFE ASSURANCE COMPANY OF FLORIDA v. POE et al.

QUILLIAN, Presiding Judge.

Martha S. Poe, as second beneficiary under the policy, brought an action on a credit life insurance contract against Founders Life Assurance Company of Florida and the First National Bank of DeKalb County. The complaint sought to recover under the terms of the contract the sum of $9,000 from defendant Founders Life and to deny recovery to the First National Bank, the creditor and the first beneficiary, under the terms of the policy on the ground that it elected not to make a claim under the policy and on the ground of payment of the insured's indebtedness into escrow in a prior and pending action between the first and second beneficiaries. Both defendants filed answers denying liability and the First National Bank filed a counterclaim. The defendant Founders Life filed a motion for a judgment on the pleadings, and the plaintiff, besides opposing that motion, also filed her own motion for judgment on the pleadings against Founders Life only seeking a determination as to liability for the face amount of the insurance contract, as

well as bad faith, penalty, and attorney fees. The plaintiff then filed a motion for summary judgment against the defendant the First National Bank. The cause came on for hearing after which the trial judge entered judgment for $2,000 and costs against Founders Life and further found in favor of the defendant the First National Bank allowing it to recover that sum. Plaintiff appeals from this judgment in case 55048; while the defendant Founders Life appeals from the judgment insofar as it was found liable for the sum of $2,000 in case 55049.

1. There is no material dispute with regard to the facts. The sole issue is whether the suicide clause of the contract is applicable under the facts. The plaintiff's decedent committed suicide on June 1, 1976. At that time he was insured by Founders Life in the sum of $9,000 under a credit life insurance contract.

The plaintiff's decedent obtained loans from the First National Bank and purchased credit life insurance from Founders Life beginning 1975 as follows:

| Date of Loan | Loan Amount | Ins. Amount | Date of Renewal |
|---|---|---|---|
| 11/5/75 | $8,000 | $8,000 | 12/5/75 |
| 12/5/75 | 8,000 | 8,000 | 2/12/76 |
| 1/19/76 | 3,000 | 3,000 | 2/12/76 |
| 2/12/76 | 10,000 | 10,000 | 5/12/76 |
| 5/12/76 | 18,000 | 9,000 | |

The plaintiff contends that the loan remained outstanding and insured by Founders continuously until decedent's death on June 1, 1976, being renewed separately or in conjunction with other and additional insured loans on three separate occasions. On the date of death the outstanding loan was in the amount of $18,000 due on a renewal note made May 12, 1976, as to which Founders had issued its insurance certificate in the amount of $9,000. At each renewal, the preceding note or notes were paid by renewal and a new insurance certificate issued by Founders, in the same transaction. The insurance contract between Founders and the decedent consisted of a certificate and a master group policy, each of which contained a six-months suicide clause.

The clause of the certificate in force at the time of the death of plaintiff's decedent reads as follows: "Suicide — If the borrower, while sane or insane, shall commit suicide within six months after the effective date of his coverage, the liability of the Company shall be limited to the return of premiums paid." The insurance certificate provided that it was issued "under and subject to" the terms of the master group policy.

The master group policy contains the following provision: "21. Suicide: If any insured Debtor hereunder shall commit suicide while sane or insane within six months from the date on which insurance coverage is granted to such Debtor, the liability of the Company under this contract is limited to the premium paid hereon and no more."

Founders Life argues that since all of the renewals of the original loan were, in effect, new loans, the insurance contract of May 12, 1976 was a separate and distinct contract which commenced a new six months time period regarding the suicide clause. Therefore, since only 19 days had expired before the death of plaintiff's decedent there was no coverage under the policy. This argument is based on two Code sections: first, Code Ann. § 56-3302 (1) (Ga. L. 1960, pp. 289, 743), which defines credit life insurance as "insurance on the life of a debtor pursuant to or in connection with a specific loan or other credit transaction"; the second, Code Ann. § 56-3305 (Ga. L. 1960, pp. 289, 745) provides in part: "If the indebtedness is discharged due to renewal or refinancing prior to the scheduled maturity date, the insurance in force shall be terminated before any new insurance may be issued in connection with the renewed or refinanced indebtedness."

What is overlooked in this argument is the terminology used in both the master policy and in the certificate of May 12, 1976. The master policy refers to the date on which insurance *coverage* is granted; while the certificate reads: "within six months after the effective date of his *coverage.*" There is no use of such terminology as "from the effective date of this policy."

Of course, we construe the terms of an insurance policy, if they are ambiguous, against the party who drew the contract. *Johnson v. U. S. Fidelity &c. Co.,* 93 Ga. App.

336 (91 SE2d 779); *Pacific Indem. Co. v. Benson,* 122 Ga. App. 230 (176 SE2d 668); *North British &c. Ins. Co. v. Mercer,* 211 Ga. 161 (84 SE2d 570). In this case, since the terminology used is "within six months after the effective date of his coverage," and "coverage" in the broad sense began on the insured on November 5, 1975, there is no basis to apply the suicide clause since the deceased's coverage began more than six months prior to his death. The fact that the May 12, 1976 contract might constitute a new agreement in no way affects when the deceased's insurance coverage began. See in this connection *Massachusetts Benefit Life Assn. v. Robinson,* 104 Ga. 256, 282 (30 SE 918). If the insurance company had desired to create a new probationary period after the renewal of each contract, it could easily have inserted such restrictive language. The insurance company did not choose to do so. Thus, any ambiguity must be resolved in favor of the insured.

We therefore find that the suicide clause contained in both the master policy and the certificate of May 12, 1976 did not serve to prevent recovery under the terms of the policy. Since there was no basis for apportionment such as the trial judge attempted, it was therefore error not to allow full recovery of $9,000 under the terms of the policy.

2. As first beneficiary under the policy, the First National Bank was entitled to the proceeds thereof. However, it was not entitled to such proceeds as a matter of law but only if the loan remains unpaid. Code Ann. § 56-3306 (2) (Ga. L. 1960, pp. 289, 745); *Pioneer Homeowners Life Ins. Co. v. Hogan,* 110 Ga. App. 887 (140 SE2d 212). In order to be entitled to recover the full sum, on summary judgment the burden was on the defendant bank to establish all facts necessary to support this recovery. The record in this case shows that in another suit the plaintiff had paid in an amount sufficient to satisfy the loan and that this was in issue in such other suit. That being true, the grant of judgment in favor of defendant bank was premature and must be reversed.

3. The issue before this court was doubtful and there was reasonable and probable cause for the defense raised. Hence, there is no basis for the grant of penalty and attorney fees as contended for by the plaintiff. *Interstate*

*Life &c. Ins. Co. v. Williamson,* 220 Ga. 323 (138 SE2d 668).
    *Judgment reversed in 55048; judgment affirmed in 55049. Webb and McMurray, JJ., concur.*

ARGUED JANUARY 11, 1978 — DECIDED APRIL 5, 1978 —
REHEARING DENIED APRIL 28, 1978 — CERT. APPLIED FOR.

    *Roy J. Leite, Jr., James Arogeti,* for appellant (Case no. 55048).
    *M. Hardeman Blackshear, Heyman & Sizemore, William H. Major, Joseph M. Feuer,* for appellees (Case no. 55048).
    *William H. Major,* for appellant (Case no. 55049)
    *Roy J. Leite, Jr., James Arogeti, M. Hardeman Blackshear,* for appellees (Case no. 55049).