**Munir H. ATALLA, Plaintiff–Appellee,**

v.

**Ahmad H. ABDUL–BAKI,
Defendant–Appellant.**

**No. 91–2203.**

United States Court of Appeals,
Fourth Circuit.

Argued June 3, 1992.

Decided Sept. 23, 1992.

As Amended Nov. 2, 1992.

---

William B. O'Connell, Jr., Arlington, Va., argued, for defendant-appellant.

Alan Bruce Croft, Shaw, Pittman, Potts & Trowbridge, McLean, Va., argued (Edward J. Reed, Shaw, Pittman, Potts & Trowbridge, McLean, Va., Michael James McCue, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., on brief), for plaintiff-appellee.

Before NIEMEYER and LUTTIG, Circuit Judges, and GARBIS, United States District Judge for the District of Maryland, sitting by designation.

## OPINION

NIEMEYER, Circuit Judge:

This diversity case centers around a handwritten "Settlement Agreement and Mutual Release" executed by Munir H. Atalla and Ahmad H. Abdul–Baki on July 1, 1990, and its intended effect on Atalla's right to contribution from Abdul–Baki for payment representing Abdul–Baki's share of a debt incurred by them jointly in 1987. Deriving the intent of the parties "from the face of the instrument viewed as a whole," the district court concluded that the agreement does not express the parties' intent that Abdul–Baki be released from the contribution claim and entered summary judgment in Atalla's favor. Because we find the language of the written agreement to be ambiguous with regard to its intended effect on the contribution claim, we reverse and remand for consideration of extrinsic evidence, as needed, and a factual determination as to the actual intent of the parties.

## I

In 1982, Ahmad H. Abdul–Baki formed Tricon Enterprises, Inc., a Delaware corporation, for the purpose of doing business by acquiring, managing, and selling real estate on behalf of investors. At the suggestion of Abdul–Baki, Munir H. Atalla invested $150,000 in Tricon in exchange for 50% of the outstanding stock. In furtherance of its business, in February 1987, Tricon obtained a $6 million revolving line of credit from Arab Bank Limited and in connection with the credit arrangement both Atalla and Abdul–Baki executed a surety agreement in which they "jointly, severally and indivisibly" guaranteed repayment of

all sums due to Arab Bank from Tricon pursuant to the Tricon credit agreement. In January 1989, Tricon's full debt to Arab Bank became due and upon Tricon's failure to pay, in July 1989, Arab Bank so notified Atalla and Abdul–Baki, demanding repayment.

In April 1990, Atalla paid $253,048.95 in interest due to Arab Bank under the credit agreement. No further payments were made to Arab Bank, resulting in the bank making demand in January 1991 on Atalla and Abdul–Baki for payment of the entire remaining balance of $7,575,534.27.

At about the same time that Arab Bank made its initial demands for repayment in 1989, the relationship between Atalla and Abdul–Baki was already deteriorating. Atalla began charging that Abdul–Baki, who ran Tricon's day-to-day operations, had failed to take actions necessary to preserve the company as an on-going business and had deprived Atalla of a return on his investment by mishandling, diverting, or stealing corporate funds. In early 1990, Atalla instituted several separate legal proceedings against Abdul–Baki.

In the summer of 1990, while both men were in Amman, Jordan, Atalla and Abdul–Baki decided, on the advice of "mutual acquaintances," to try to reach an amicable resolution of their differences. On July 1, 1990, Abdul–Baki provided to Atalla an eleven-paragraph handwritten document, which he states he prepared from drafts that had earlier been prepared and exchanged between their respective attorneys. Atalla reviewed the proposed agreement, made a few minor corrections, and both men signed it. In pertinent part, their agreement reads as follows:

### SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This agreement is entered into by Munir Atalla and Ahmad H. Abdul Baki on July 1, 1990. The parties wish to settle all disputes and claims they have or may have against each other. The parties agree as follows:

\*    \*    \*    \*    \*    \*

5. Abdul Baki and Atalla acknowledge their joint and several guaranty to both the Arab Bank Ltd. and Credit Commerciale de France and will sign the necessary documents as requested by the banks.

\*    \*    \*    \*    \*    \*

8. Abdul Baki and Atalla agree to jointly appoint within 90 days an arbitrator. Atalla will submit to the arbitrator for binding arbitration his respective claims and reasons why the amounts claimed are due. The arbitrator shall undertake to issue a final decision within 90 days. The decisions of the arbitrator shall be final and not subject to further appeal. The USD 250,00 paid by Abdul Baki [in accordance with paragraph 1 of this agreement] shall be credited against any sums which may be due from Abdul Baki to Atalla.

9. Abdul Baki ... releases, remises and forever discharges Atalla from any and all claims, demands, damages and causes of action of any action [sic], whether past or present and whether or not now claimed or known, that he has had, now has or may hereafter have in connection with any matter whatsoever from the beginning of time through the date hereof.

10. Atalla ... releases, remises and forever discharges Abdul Baki from any and all claims, demands, damages and causes of action of any kind, whether past or present and whether or not now claimed or known, that he has had, now has or may hereafter have in connection with any matter whatsoever from the beginning of time through the date hereof.

\*    \*    \*    \*    \*    \*

The present diversity action was filed in April 1991. After Arab Bank made its final demand for repayment of all sums owed by Atalla and Abdul–Baki, Atalla agreed in March 1991 to a plan by which he would reduce his obligation to the bank. Atalla has subsequently made payments to Arab Bank in accordance with the plan. In April 1991, Atalla demanded that Abdul–Baki make contribution to Atalla in the

amount of one-half of all sums that Atalla had paid or had committed to pay to Arab Bank, pursuant to their mutual obligations. Abdul–Baki made no such contribution, leading to this suit in which Atalla requested the district court to order that Abdul–Baki contribute his share of those payments already made by Atalla and to declare that Abdul–Baki be obligated to pay one-half of all sums paid to Arab Bank in connection with their equitable obligations as co-sureties.

■ Because the parties agree that Virginia law applies to this case and that under Virginia law a surety maintains a right to contribution from a co-surety, *see Sacks v. Tavss,* 237 Va. 13, 375 S.E.2d 719 (1989), the principal question before the district court was whether the settlement agreement signed by the parties in July 1990 barred Atalla's action for contribution. On cross-motions for summary judgment, the district court entered judgment preserving Atalla's claim for contribution based on its conclusion that the "broad language of a general release [found in paragraph 10 of the agreement] does not specifically alter the earlier acknowledgment in paragraph 5 of that agreement regarding the liability of the parties to the Arab Bank." Abdul–Baki now appeals that decision, arguing that the settlement agreement unambiguously expresses the intent to foreclose Atalla's suit for contribution.

## II

In reviewing the district court's grant of summary judgment for Atalla, this court will consider de novo whether there exist any genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Notably, both parties to this appeal contend that no factual questions remain in dispute and therefore that the case is readily susceptible to resolution by way of summary judgment, but they have a healthy disagreement over the intent and effect of the agreement they signed.[1]

■ Atalla maintains that the district court's interpretation of the July 1, 1990, settlement agreement, which construed paragraph 5 of the agreement as recognizing the viability of Atalla's right to contribution, notwithstanding the broad language of release contained in paragraph 10, is the only reasonable manner in which the agreement can be construed. To the contrary, Abdul–Baki claims that the broad language of paragraph 10 unambiguously releases any claim for contribution by Atalla and that the plain language of paragraph 5 merely recognizes both parties' obligations to Arab Bank and conspicuously says nothing with regard to the continued existence of any obligation to one another. Because we find neither Abdul–Baki nor Atalla persuasive in their arguments that the terms of the settlement agreement unambiguously express the intent of the parties with respect to their continued rights and duties regarding the debt to Arab Bank, we consider the issue of intent to be a disputed factual question, which is not suitable for resolution by summary judgment at this time. *See Bear Brand Hosiery Co. v. Tights, Inc.,* 605 F.2d 723, 726 (4th Cir.1979); *Wilson v. Bluefield Supply Co.,* 819 F.2d 457, 466 (4th Cir.1987).

■ As we stated in *Bear Brand Hosiery,* "[o]nly an unambiguous writing justifie[s] summary judgment, and no writing is unambiguous if 'susceptible of two reasonable interpretations.' ... If there is more than one permissible inference as to intent to be drawn from the language employed, the question of the parties' actual intention is a triable issue of fact." 605 F.2d at 726 (quoting *American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co.,* 354 F.2d 214, 216 (4th Cir.1965)). We have recognized that even though a single paragraph of an agreement may appear to be unambiguous, when it is read in the context of the entire agreement an ambiguity may result, requiring further factual development to determine the intent of the parties. *See World–Wide Rights Ltd.*

---

1. While the record provides almost no extrinsic evidence of the parties' intent, at argument they acknowledged that such evidence could be developed.

*Partnership v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir.1992). Recognizing that the arguments of both parties in this case present a similar circumstance, we conclude that the settlement agreement around which this dispute revolves is capable of at least two plausible interpretations.

■ As argued by Abdul–Baki, paragraph 10 of the settlement agreement contains what would appear to be an all-encompassing release clause. It provides:

> Atalla ... releases, remises and forever discharges Abdul Baki from any and all claims ... and causes of action of any kind, whether past or present and whether or not now claimed or known, that he has had, now has or may hereafter have in connection with any matter whatsoever from the beginning of time through [July 1, 1990].

Considering that Atalla's claim for contribution, at least in some sense, arises out of the February 1987 surety arrangement between Atalla, Abdul–Baki, and Arab Bank, it quite arguably could be considered a cause of action "in connection with" a matter existing before July 1, 1990, which places the claim within the category of those released by Atalla.

Paragraph 10, however, cannot be read in isolation, since the entire document is the agreement between the parties, *see Restatement (Second) of Contracts* § 202(2) (1981) (recommending that "[a] writing [be] interpreted as a whole"), and each provision should be given effect to the extent possible, *see id.* § 202(5) (recommending that "[w]herever reasonable, the manifestations of intention of the parties to a promise or agreement [be] interpreted as consistent with each other"). Thus, if paragraph 5 had been intended to preserve particular contribution claims between the parties, a reading of the agreement that would give effect to both paragraphs 5 and 10 would find that the contribution claims were preserved and *all other* claims released. Agreements resolving complex commercial disputes typically contain numerous paragraphs addressing the agreed-upon disposition of the disputes between the parties, and almost all conclude with paragraphs giving general releases in broad terms. It would do violence to almost every such agreement to have the broad release language of one paragraph vitiate the rights and agreements expressly stated in other paragraphs of the same agreement.

That this principle must be applied in this case is illustrated forcefully by reading the release paragraphs (paragraphs 9 and 10) in conjunction with paragraph 8. While the releases purport to apply to "all" previous claims, paragraph 8 contains the provision, "Atalla will submit to the arbitrator for binding arbitration his respective claims." This provision indicates. that release of "all" previous claims in paragraphs 9 and 10 does not really mean that all claims were intended to be released. The proper interpretation gives effect to the more specific treatment of claims referred to arbitration and leaves for release other claims not preserved by the agreement itself.[2]

When applying these principles to the issues in this case, it thus becomes necessary to read beyond the broad language of the releases and understand the rights and claims of the parties *preserved by other paragraphs* of the agreement. In particular, the parties have debated the rights preserved by paragraph 5, which Atalla claims was intended to preserve mutual rights of contribution, and paragraph 8, which both parties agree clearly preserves some claims for arbitration.

Thus faced with the issue of interpreting paragraph 5, the district court concluded that the acknowledgement by the parties of their joint and several liability to Arab Bank of necessity expressed a recognition of the fact that a contribution claim by either party, which could result from the surety arrangement creating that liability, was preserved in paragraph 5. The district

---

**2.** We fear the dissent may misunderstand our point regarding the interplay of paragraphs 5, 8, and 10. Rather than suggest that the contribution claim was intended to be committed by the parties to arbitration, we merely note that the existence of paragraph 8, in the face of the broad waiver provision, indicates that it is, at least, reasonable to conclude that paragraph 10 should be interpreted to release only matters not otherwise covered in the agreement.

court found this to be the expressed intent of the parties.

While paragraph 5 does indeed acknowledge liability of Abdul–Baki and Atalla to Arab Bank and the district court's interpretation may be the more logical one, the paragraph does not explicitly recognize the continuing existence of the liability of each to the other for his share of the debt when repaid. Therefore, we cannot agree with the district court that the provision *unambiguously* extends a right of contribution.

A further difficulty in attempting to discern whether paragraphs 5 and 10 express an unambiguous intent to release the contribution claim arises from the fact that Atalla's right to assert a contribution claim did not arise until *after* the agreement was executed, because he did not pay more than his pro rata share until March 1991, after the agreement was executed. The agreement was signed July 1, 1990, and contains mutual releases for all claims or causes of action "in connection with any matter whatsoever from the beginning of time through the date hereof." Atalla argues that since he did not pay more than his pro rata share until after execution of the release and therefore did not have a right to contribution until he made the payment, the plain language of paragraph 10 expresses the intent *not* to release the claim.

To answer that argument, Abdul–Baki focuses on the release term, "cause of action," which he understands to be a term of art under Virginia law, insofar as actions *for* contribution are concerned, that differs from a "right of action." Arguing that a *cause* of action is deemed to arise at the time of the creation of a co-surety relationship, whereas a *right* of action exists only after a co-surety fails to pay his or her share of a debt, *see Gemco–Ware, Inc. v. Rongene Mold and Plastics Corp.*, 234 Va. 54, 360 S.E.2d 342, 343–44 (1987), Abdul–Baki points to the use of the term "cause of action" in the paragraph 10 release provision as indicating the intent of the parties to encompass the contribution claim.

■ However, in interpreting the effect of paragraph 10 of the settlement agreement, the focus must remain upon the parties' understanding as to whether a potential contribution claim arising out of the surety agreement was intended to be construed as falling within the class of released claims described in that paragraph and not upon the intricacies of state law unless they can be shown to have been within the contemplation of the parties when the agreement was reached. *See* 4 Walter H.E. Jaeger, *Williston on Contracts* § 601, at 306 (3rd ed. 1961); *cf. Restatement (Second) of Contracts* § 202(3), cmt. f. (1981) (noting that "technical terms are often misused, and it may be shown that a technical word or phrase was used in a non-technical sense").[3] Thus, while Abdul–Baki's textual analysis may be accurate, because it depends upon so technical a distinction not within either his or Atalla's fields of expertise, the analysis can only be effective when combined with some evidence that *both* parties construed these terms to mean what he now claims they do.

To the contrary, Atalla maintains that the distinction between rights of action and causes of action, even if it does exist in Virginia law, was not what the parties had in mind when they created the settlement agreement. Atalla points out that both parties recognized their respective obligations to repay the debt to Arab Bank in paragraph 5 of their agreement, and he argues this indicates their intention to fulfill that obligation. Relying on *Sacks v. Tavss*, 375 S.E.2d at 722, for the proposition that only one surety's refusal to pay his share in combination with an actual overpayment by a co-surety gives rise to an action for contribution, Atalla claims that it is his own payment of more than his share of the debt to Arab Bank followed by Abdul–Baki's failure to live up to his duty as a co-surety (and the intentions expressed in

---

**3.** While terms of art certainly have their place in contract formation and interpretation, legal terms of art pieced together by lay persons from various drafts and revisions prepared by lawyers are not particularly helpful in understanding the intentions of the parties. *Cf. Restatement (Second) of Contracts* § 202(3)(b) ("[T]echnical terms and words of art are given their technical meaning when used in a transaction *within their technical field.*") (emphasis added).

paragraph 5 of their agreement) by refusing to pay his share that gives rise to this legal action. Since that refusal occurred after July 1, 1990, it is Atalla's view that the parties understood this claim for contribution to fall outside the scope of the release provision.

Of course, as Abdul–Baki points out, if this were the intention of the parties, one can imagine any number of ways in which paragraph 5 could have been written to express the idea better. While this realization does not render unreasonable Atalla's interpretation, when considered along with Abdul–Baki's textual arguments, it does cast doubt upon Atalla's claims that the language of the agreement unambiguously supports the district court's decision.

Because the parties assert conflicting intentions on the basis of the same language, which supports both interpretations, it is our opinion that the contract is ambiguous and that the question of intent raises a genuine issue of material fact, rendering summary judgment inappropriate. Accordingly, the entry of judgment for Atalla is reversed, and the case is remanded to the district court for consideration of additional evidence of intent, if necessary, and a factual determination as to the actual intent of the parties.

REVERSED AND REMANDED.

LUTTIG, Circuit Judge, dissenting.

Appellee Atalla and appellant Abdul–Baki entered into a "Settlement Agreement and Mutual Release" for the expressed purpose of "settl[ing] all disputes and claims they have or may have against each other." J.A. at 82. Paragraph 10 of that agreement provided as follows:

> 10. Atalla ... releases, remises and forever discharges Abdul Baki from any and all claims, demands, damages and causes of action of any kind, whether past or present and whether or not now claimed or known, that he has had, now has or may hereafter have in connection with any matter whatsoever from the beginning of time through the date hereof.

Id. at 83–84. The sole issue in this appeal is whether this paragraph, which was drafted largely if not entirely by counsel, waived any equitable right to contribution under Virginia law that Atalla might have had against Abdul–Baki as a consequence of Atalla's payment of a disproportionate share of the parties' guaranty obligation to Arab Bank, Ltd.

Both parties at argument stated unequivocally that the case was appropriate for summary judgment and that a remand by this court for factual findings on their intent was unnecessary and would prove fruitless, because no relevant extrinsic evidence as to their intent exists. Notwithstanding these representations by the two individuals who presumably would know whether any purpose could possibly be served by a remand, the court remands for an evidentiary hearing on the actual intent of the parties in including paragraph 10 in their agreement—a hearing that even the court acknowledges might not be necessary. A remand is necessary, the court assures the parties, because paragraph 10 is "ambiguous."

In my view, it would be difficult to conceive of a more comprehensive and less ambiguous waiver than that in paragraph 10. Atalla, in that paragraph, "release[d] ... and forever discharge[d]" Abdul–Baki from "any and all claims, demands, damages and causes of action of any kind," "past or present," "whether or not [then] claimed or known," "that he ha[d] had, [then] ha[d] or may [thereafter] have" "in connection with any matter whatsoever from the beginning of time through the date [t]hereof." Indeed, in frank response to questioning from the court at argument, counsel for appellee himself could not conceive of a broader or clearer waiver.

The court appears to agree that the language of paragraph 10 is unambiguous that Atalla completely waived all claims that he had or might have against Abdul–Baki. However, the paragraph is rendered ambiguous, it says, because it is possible to read paragraph 5 of the agreement as an affirmative preservation of a right of contribution in Atalla against Abdul–Baki.

*Ante* at 194. In paragraph 5, the parties *"acknowledge* their joint and several guaranty to both the Arab Bank Ltd. and Credit Commerciale de France and [agree to] sign the necessary documents as requested by the banks." J.A. at 82 (emphasis added).

To contend that paragraph 10 is ambiguous because of the presence of paragraph 5 is, as Abdul–Baki suggests, "a legal *non sequitur."* Appellant's Br. at 15. Paragraph 5 is what its plain language says it is—an acknowledgment by the parties that each remains liable to the bank on the executed surety agreement and an undertaking to sign the documents requested by the bank. That is, it acknowledges that the bank may seek payment from either Atalla, Abdul–Baki, or both of them, under the terms of the surety agreement. Atalla's right to contribution, of course, is not included within the surety agreement with the bank; if any such right exists, it is wholly a product of Virginia's law of equity. Thus, the mere acknowledgment of the parties' agreement with the bank cannot possibly "preserve" a contribution right.[1]

The court is unable to articulate how paragraph 5 is in any way inconsistent with, or for that matter how it could in any way affect, paragraph 10. It even concedes that paragraph 5 "does not explicitly recognize the continuing existence of the liability of each to the other for his share of the debt when repaid." *Ante* at 194. The only asserted support for its possible alternative interpretation of the paragraph—textual or otherwise—is the fact that paragraph 8 purports to recognize "some claims" and commit their resolution to arbitration. *Id.* The court says that it must interpret paragraph 10 so as to "give[ ] effect to th[is] more specific treat-

ment of claims referred to arbitration." *Id.* at 193.

Nothing in paragraph 8, however, could transform the mere acknowledgement of liability to a third party and an agreement to sign requested documents in paragraph 5 into the affirmative reservation of an equitable contribution right in Atalla against Abdul–Baki. The court leaves the impression that at least Atalla contends that paragraph 8 references the contribution claim at issue here, thus (so the argument goes) confirming that paragraph 5 was intended to preserve this claim. *Id.* ("[B]oth parties agree clearly [that paragraph 8] preserves some claims for arbitration."). In fact, in representations that I would regard as dispositive of the irrelevance of paragraph 8 to this dispute, both parties agree that paragraph 8 was never intended to encompass this contribution claim—an unambiguous statement of the parties' intent that the court never mentions, yet must dismiss out of hand to find the ambiguity that it does. *See* J.A. at 364–65 (Atalla); Appellant's Br. at 15 (Abdul–Baki).

The court completes its categorical rejection of the plain language of the settlement agreement with the revealing suggestion that even the meaning of the term "cause of action" in paragraph 10 must be plumbed on remand to ascertain what the parties intended, because the meaning of the term under Virginia law turns upon what the court fears is "so a technical distinction" that both parties may not have considered that the legal meaning would obtain. *Ante* at 194. Paragraph 10 was drafted and approved by parties with knowledge of the law, and the parties should be held to the legal meaning of the terms of art used throughout the document.[2] Virginia law clearly recognizes a

---

1. Nor is it true, contrary to Atalla's argument, that paragraph 5 must refer to the contribution claim because otherwise the paragraph would not define any right as between the parties. Other paragraphs in the agreement similarly do not define rights of the two parties vis-a-vis each other. *See, e.g.,* J.A. at 82, ¶¶ 3, 4.

2. The court, curiously, suggests that the intent of the parties should govern over the "intricacies of state law unless [such intricacies] can be

shown to have been within the contemplation of the parties when the agreement was reached," *id.* at 194, a proposition for which it cites 4 *Williston on Contracts* § 601, at 306 (H.E. Jaeger ed., 3d ed. 1961). In that passage, Professor Williston actually states what would appear to be the opposite principle of contract construction. He notes that "'[w]ords generally bear their usual and common signification; *but technical words, or words of art, or used in a particular trade or business, will be construed, general-*

distinction between a "cause of action" and a "right of action." *See, e.g., Gemco-Ware, Inc. v. Rongene Mold & Plastics Corp.*, 234 Va. 54, 360 S.E.2d 342, 343–44 (1987); *Shiflet v. Eller*, 228 Va. 115, 319 S.E.2d 750, 754 (1984). And it appears that the cause of action for contribution on a guaranty from a co-surety arises at the time the guaranty is executed. The court all but concedes as much. *Ante* at 194. Because Atalla's contribution *cause of action* existed at the time the parties entered into their settlement agreement, it was, by the plain terms of paragraph 10, waived.[3]

Although the court does not address the issue, Virginia's distinction between causes of action and rights of action is irrelevant in the context of this case in any event, if the plain language of the parties' agreement is respected. Atalla released and forever discharged Abdul–Baki not only from any and all causes of action, but also from "any and all" "claims" and "demands." Any asserted "right of action" certainly would constitute a "claim" or "demand." And given that Atalla discharged Abdul–Baki from any and all claims *in futuro* and whether or not then in existence, it would be irrelevant that that right of action arose after the agreement was executed.

The theme of the court's opinion is that this is a case in which a "general release in broad terms" must be read so as to preserve "expressly stated" rights in other paragraphs of the same document. *Id.* at 193. Its underlying policy concern is that construing broad language of waiver so as

to negate rights otherwise clearly recognized "would do violence to" "[a]greements resolving complex commercial disputes." *Id.* If the contribution right had been agreed upon in another provision of the document, then this general maxim of interpretation might have force. But its inapplicability is manifest where, as here, the predicate to it application, *i.e.*, that the alleged right is "expressly stated" or preserved elsewhere, is absent.

The court's opinion points up the costs that inhere in a jurisprudence of contract interpretation that attempts to divine the "intent of the parties" independent of the language that they choose to embody their intent. For adherents to this jurisprudence, no unambiguous contractual provision dictates an "unfair" result. As here, an "ambiguity" is always found, regardless of the clarity of the contractual language. And once found, the court is essentially free to give legal effect to its own sense of what would be fair as between the contracting parties.

The parties before us entered into a settlement agreement for the stated purpose of "settl[ing] all disputes and claims they have or may have against each other." I would give effect to this unambiguous agreement, and I respectfully dissent from the court's unwillingness to do so.

---

ly, to be used in reference to this peculiar meaning,'" absent special definition in the contract or pattern of dealing suggesting a contrary definition. *Id.* (quoting *Johnson v. United States Fidelity & Guar. Co.*, 93 Ga.App. 336, 341, 91 S.E.2d 779 (1956), which was in turn quoting a statutory provision). Professor Williston goes on, *supra* at 309, to quote approvingly from *Hicks v. Mid–Kansas Oil & Gas Co.*, 182 Okl. 61, 76 P.2d 269, 271–72 (1938) (internal quotations omitted, and modified to reflect case text accurately) (emphasis added), as follows:

> [A] contract must be interpreted as to give effect to the mutual intention of the parties at the time of contracting, and in so doing the language of the contract governs if it is clear and does not involve an *absurdity*, and the intention of the parties to a written contract is to be ascertained from the writing alone, if possible.... [I]t is *the duty of the courts to*

declare the meaning of what is written in the instrument, not of what was intended to be written.

The court also attempts to draw support for its general approach to contract interpretation from comment f to the *Restatement (Second) of Contracts* § 202(3). The actual Rule of which comment f is explanatory, however, states that "[u]nless a different intention is manifested, ... (b) technical terms and words of art are given their technical meaning when used in a transaction within their technical field."

3. While the court apparently does not appreciate the force of this argument, Atalla certainly does. Throughout his brief, he noticeably omits from his discussions of paragraph 10 its explicit reference to the waiver of any and all "causes of action," referring instead only to the paragraph's waiver of all "claims."