**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: FAIRFAX MEDICAL CENTER
ASSOCIATES II,
<u>Debtor.</u>

FTD, L.C.,
<u>Plaintiff-Appellant,</u>

v.

PETER BERNAD; WILLIAM L. GLOVER;
CHARLES D. KIRKSEY; MOHAMMED R.
MOINFAR; WILLIAM C. SILBERMAN;
BAIKUTH SINGH; COMMERCIAL
CONDOMINIUM MANAGEMENT

COMPANY, INCORPORATED; FAIRFAX
NURSING CENTER, INCORPORATED;
NORTHERN VIRGINIA GYNECOLOGISTS
INVESTORS, G.P.; FAIRFAX NURSING
CENTER OFFICE LIMITED PARTNERSHIP,
d/b/a Fairfax Nursing Center Office,
Ltd.,
<u>Defendants-Appellees,</u>

and

JOSEPH BALLO; MIGUEL H. GONZALEZ;
BRIAN C. CAMPDEN-MAIN; MARY L.
SARA,
<u>Defendants.</u>

No. 96-2254

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.

(CA-96-1112-A, BK-95-15403-DOT, AP-96-1004-DOT)

Argued: June 4, 1997

Decided: September 2, 1997

Before WILLIAMS and MICHAEL, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Reversed and remanded by unpublished per curiam decision.

_____

**COUNSEL**

**ARGUED:** Deborah Jean Israel, SILVERSTEIN & MULLENS,
P.L.L.C., Washington, D.C., for Appellant. David J. McClure,
HIRSCHKOP & ASSOCIATES, P.C., Alexandria, Virginia, for
Appellees. **ON BRIEF:** William M. Harvey, SILVERSTEIN &
MULLENS, P.L.L.C., Washington, D.C., for Appellant. Philip J.
Hirschkop, HIRSCHKOP & ASSOCIATES, P.C., Alexandria, Vir-
ginia; John D. Steffan, STEFFAN & ASSOCIATES, P.C., Fairfax,
Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiff (and appellant) FTD, L.C., brought suit against defendants
Peter Bernad and others, alleging that the defendants breached their
guaranties on a note now held by FTD. At issue is whether the defen-
dants, who are all partners in the now-bankrupt Fairfax Medical Cen-
ter Associates II General Partnership (the Partnership), are liable
under the note for the outstanding principal. The defendants contend

2

that the guaranties limited their liability on the note to interest, real estate taxes, and insurance premiums, while FTD contends that the guaranties also cover the principal sum. The bankruptcy court agreed with the defendants and granted summary judgment against FTD. The district court affirmed. We conclude, however, that the meaning of the guaranties is ambiguous, and we therefore reverse and remand to the district court for trial.

I.

As its name might indicate, the Fairfax Medical Center Associates II General Partnership was formed by the partners, primarily medical doctors, to hold and manage medical office buildings located in Fairfax, Virginia. In 1987 the Partnership obtained a $5.9 million loan from Old Stone Bank to finance a second medical office building.[1] The loan was secured by a deed of trust on the building. The Partnership executed the Promissory Note, and the partners executed individual guaranties. Eleven of the twelve partners executed guaranties which provided as follows:

> 1. Subject to the limitations set forth below, Guarantors guarantee to Lender the prompt, absolute, and unconditional payment of the principal sum disbursed under and evidenced by the Note together wi[th] all interest thereon . . . and any and all sums of money which, at any time, may become due and payable under the provisions of the Deed of Trust and other Loan Documents . . . .

> 2. Notwithstanding anything contained herein to the contrary, it is understood and agreed that the liability of Guarantors hereunder is limited to the payment of (i) any and all interest that accrues on and is added to the principal balance of the Note pursuant to the terms thereof to an aggregate maximum for all Guarantors of $182,500.00, (ii) all real estate taxes due against the Mortgaged Property, and (iii) all

_____

[1] Defendants claim that this 1987 loan was a refinance of a loan from Old Stone Bank made in 1985. FTD, however, claims that the documents for the 1987 loan evidence no connection to a 1985 loan.

> insurance premiums for insurance policies required to be
> maintained by the Borrower . . . .

J.A. 628, 638, 645, 652. However, one guaranty, which was signed by Robert Bainum on behalf of the Fairfax Nursing Center Office Limited Partnership (the twelfth partner in the Partnership), contained different language. In that guaranty, paragraph 1 stated:

> 1. Subject to the limitations set forth below, Guarantors
> guarantee to Lender the prompt, absolute, and unconditional
> payment of that portion of the interest due on the Note as
> specified in Paragraph 2 . . . together with all real estate
> taxes due against the mortgaged property and all insurance
> premiums for insurance policies required to be maintained
> by the Borrower . . . .

J.A. 659.

In early 1994 Old Stone Bank came under receivership of the Resolution Trust Corporation (RTC). The loan matured in August 1994, but just prior to maturity the Partnership defaulted on the loan. FTD bought the loan from the RTC in November 1995. On December 5, 1995, several of the partners filed an involuntary Chapter 11 bankruptcy petition against the Partnership. Two days later FTD filed in Virginia state court the breach of contract claims at issue in this case, alleging that the defendants had failed to make the payments required under the loan.

In January 1996 defendants removed FTD's action to the United States District Court for the Eastern District of Virginia. The district court referred the case to the bankruptcy court, which was concurrently conducting the Partnership's chapter 11 proceeding. As part of that proceeding, FTD moved for relief from the automatic stay on the Partnership's assets in order to foreclose on the deed of trust. The bankruptcy court granted the relief. The defendants then moved for partial summary judgment on FTD's breach of contract claims. The bankruptcy court entered an order granting the motion, holding that

4

the defendants were liable only for $182,500 in interest on the note. The district court affirmed the order, and FTD now appeals.[2]

II.

FTD argues that the bankruptcy court erred in granting summary judgment on its breach of contract claims against the defendants. FTD contends that the guaranties signed by the defendants clearly extend to cover the principal amount of the loan, along with interest, taxes, and insurance.[3] The defendants claim that the bankruptcy court correctly determined that the guaranties extend only to interest, taxes, and insurance. We review the grant of summary judgment de novo. See United States v. Jefferson-Pilot Life Ins. Co., 49 F.3d 1020, 1021 (4th cir. 1995).

Looking at the text of all of the guaranties (except the guaranty signed by Robert Bainum), there appears to be textual support for both sides' positions. Paragraph 1 guarantees "the prompt, absolute, and unconditional payment of the principal sum disbursed under and evidenced by the Note." J.A. 628. This language appears to be a straightforward guarantee of the entire principal. Paragraph 2, however, states that the liability of the guarantors "is limited to the payment of (i) any and all interest . . . to an aggregate maximum for all Guarantors of $182,500.00, (ii) all real estate taxes due against the Mortgaged Property, and (iii) all insurance premiums for insurance policies required to be maintained by the Borrower." Id. This language appears to limit the liability to interest, taxes, and insurance premiums and does not include any liability for the principal. The contrast between these two paragraphs is highlighted by the difference in the guaranty signed by Bainum. Paragraph 1 of the Bainum

_____

[2] FTD has filed two motions requesting that we take judicial notice of other orders of the bankruptcy court. Because taking notice of these orders would not effect our disposition of this appeal, we deny the motions.

[3] FTD also makes a res judicata argument, claiming that the bankruptcy court first decided this issue in favor of FTD during the lift stay hearing. As the defendants point out, however, FTD failed to raise this argument before the bankruptcy court or the district court. The argument was therefore waived. See Tabion v. Mufti, 73 F.3d 535, 539 (4th Cir. 1996).

5

guaranty only guarantees "the prompt, absolute, and unconditional payment of that portion of the interest due on the Note as specified in Paragraph 2 . . . together with all real estate taxes due against the mortgaged property and all insurance premiums for insurance policies required to be maintained by the Borrower." J.A. 659. The Bainum guaranty does not discuss liability for the principal.

We find the contradiction between paragraphs 1 and 2 sufficient to create an ambiguity about the meaning of the guaranty. Although the district court recognized that "[t]here does appear to be a problem" with the contradictory language, it nevertheless found that the guaranties were not ambiguous because paragraph 2 was"the ultimate trump" that took away the guarantee in paragraph 1. J.A. 76, 78. We do not read paragraph 2 so powerfully. It is possible that the limitation language in paragraph 2 was intended to wipe out the guaranty of principal in paragraph 1. Needless to say, however, such drafting would be unusual. See Ames v. American Nat'l Bank, 176 S.E. 204, 217 (Va. 1934) ("The presumption always is that the parties have not used words aimlessly and that no provision is merely a superfluity . . . ."). Moreover, this interpretation (that paragraph 2 cancels out the guaranty of principal) is by no means compelled. Paragraph 2 might be read as limiting only those payments which it specifically discusses; for example, it would limit interest to $182,500. Since paragraph 2 does not discuss payment of principal, it could be interpreted as having no effect on the guarantee of principal made in paragraph 1.

The defendants argue that the contradiction can be resolved by looking to other loan documents involved in the transaction. According to defendants, the loan contract must be read to include not only the note, the deed of trust, and the guaranties, but also amendments made on August 20, 1987, to Old Stone Bank's commitment letter.[4] Assuming that the August 20 amendments are part of the underlying

_____

[4] The note specifically references these amendments as part of the "loan documents." See J.A. 549 ("The Note, the Deed of Trust, the Assignment of Leases, the commitment letter dated June 30, 1987, as amended by letter agreement dated August 20, 1987, issued in connection with the Loan and all such other documents and agreements are herein referred to collectively as the `Loan Documents.'").

agreement, we nevertheless do not find that they resolve the meaning of the guaranties. The defendants point to two amendments as dispositive to the meaning of the guaranty. The first amendment states that condition 2 of the original commitment offer shall be amended to read: "All partners shall unconditionally guarantee, by a written guaranty agreement . . ., payment on a pro rata ownership share basis . . ., all interest (to an aggregate maximum for all partners of . . . $182,500), taxes and insurance." J.A. 805. This amendment, however, is only a restatement of paragraph 2 of the actual guaranty. If anything, it is less compelling than paragraph 2 itself because it lacks paragraph 2's language that liability is "limited" to interest, taxes, and insurance premiums. The defendants also point to an amendment to condition 8 which reads: "It is further understood that any new partner is to become personally liable for the loan under the terms and conditions of Condition No.2-Guarantor." J.A. 806. The defendants claim that this language shows that the guaranty in Condition 2 was the only one imposed on the partners. While the amendment does offer some evidence in that regard, it is not dispositive. As with paragraph 2, the amendment could be read only to specify the amount of interest, taxes, and premiums for which new partners would be liable. Alternatively, it could mean that new partners did not have to assume liability for the principal.

The district court also seems to have been influenced by its view of the parol evidence offered by both parties. The court told FTD that it was "damned if you do and damned if you don't," because if FTD convinced the court that the guaranty was ambiguous, then the defendants' parol evidence would be allowed in to resolve the matter. J.A. 80. The court suggested that the affidavit of Ronald K. Wills, who allegedly helped negotiate the loan in 1987, would be "devastating" to FTD's position. Id. However, in its summary judgment opinion the bankruptcy court explicitly excluded the Wills affidavit from the record. The district court recognized this and acknowledged that the affidavit was "really not before [the bankruptcy court] and it's not before me." J.A. 80. Even if we were to consider the Wills affidavit, however, we do not find that it entitles the defendants to summary judgment. The affidavit alleges that Old Stone Bank generally did not require personal guaranties on commercial loans and that the parties did not intend for the defendants to guarantee the principal. Such testimony, even if it could be considered to have some probative value,

7

is not sufficient to resolve the glaring contradiction in the text of the guaranty itself. Affidavits from three of the defendants claiming that they did not intend to guarantee the principal likewise cannot resolve the contradiction on summary judgment.**5**

"Only an unambiguous writing justifie[s] summary judgment, and no writing is unambiguous if susceptible of two reasonable interpretations. . . . If there is more than one permissible inference as to intent to be drawn from the language employed, the question of the parties' actual intention is a triable issue of fact." Bear Brand Hosiery Co. v. Tights, Inc., 605 F.2d 723, 726 (4th Cir. 1979) (quotations and citations omitted), quoted in Atalla v. Abdul-Baki , 976 F.2d 189, 192 (4th Cir. 1992); see also Combs v. Dickenson-Wise Med. Group, 355 S.E.2d 553, 557 (Va. 1987) ("[W]henever it is necessary to refer to testimony of witnesses in order to ascertain the contract, or to ascertain facts in the light of which the contract is to be construed, then the court is bound to refer such controverted matters of testimony to the decision of the jury." (quoting Camp v. Wilson, 33 S.E. 591, 592 (Va. 1899))). Given the two permissible yet contradictory interpretations that could be given to the guaranties, this issue should not have been disposed of on summary judgment. In Atalla the agreement between the parties also had two contradictory provisions: one stated that all claims against the defendant were waived, while the other stated that the plaintiff had a right of contribution. We held that "[b]ecause the parties assert conflicting intentions on the basis of the same language, which supports both interpretations, it is our opinion that the contract is ambiguous and that the question of intent raises a genuine issue of material fact, rendering summary judgment inappropriate." Atalla, 976 F.2d at 195. Faced with a case that is similar in all relevant respects to Atalla, we too conclude that summary judgment is inappropriate.

_____

**5** The defendants' parol evidence is also counterbalanced by the defendants' tax returns, which were offered by FTD. The returns characterize the loan as a recourse loan (i.e., a loan for which the defendants would be personally liable) for tax purposes. See J.A. 690-755.

8

III.

The district court erred in affirming the bankruptcy court's order granting partial summary judgment against FTD. We therefore reverse the district court's order and remand for trial on FTD's claims.**6**

REVERSED AND REMANDED

_____

**6** FTD also contends that the bankruptcy court did not have jurisdiction to enter a final order dismissing its claims. Bankruptcy courts have jurisdiction to enter final orders in "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). FTD argues that their underlying claims did not arise under title 11 and are not core proceedings, and therefore the bankruptcy court had no jurisdiction to enter a final order. However, since we now reverse that order and remand the case to district court for trial, the issue of the bankruptcy court's jurisdiction to enter a final order is moot. If we were to find that the bankruptcy court did not have jurisdiction, FTD would simply be entitled to a remand to the district court with a direction that it review the summary judgment order de novo.

Of course, we would have to dismiss the case if the district court did not have jurisdiction over FTD's claims. The district court has jurisdiction over the claims as long as they constitute proceedings "arising in or related to cases under title 11." 28 U.S.C. § 1334(b). FTD does not contend that its claims do not "relate to" a proceeding under title 11. Given the connection between the defendants, the Partnership (the debtor in the underlying bankruptcy case), and the relief sought by FTD, we find that FTD's claims are sufficiently related to the bankruptcy proceeding to provide the district court with jurisdiction.

9