**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-2256

KNOX ENERGY, LLC; CONSOL ENERGY, INCORPORATED,

Plaintiffs - Appellees,

v.

GASCO DRILLING, INC., A Virginia Corporation,

Defendant - Appellant.

No. 14-2296

KNOX ENERGY, LLC; CONSOL ENERGY, INCORPORATED,

Plaintiffs - Appellants,

v.

GASCO DRILLING, INC., A Virginia Corporation,

Defendant - Appellee.

Appeals from the United States District Court for the Western District of Virginia, at Abingdon.  James P. Jones, District Judge.  (1:12-cv-00046-JPJ-PMS)

Argued:  December 9, 2015          Decided:  February 2, 2016

Before MOTZ and FLOYD, Circuit Judges, and John A. GIBNEY, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

———————

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

———————

**ARGUED:** Daniel G. Bird, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C., Washington, D.C., for Appellant/Cross-Appellee. Michael John Finney, GENTRY LOCKE, Roanoke, Virginia, for Appellees/Cross-Appellants. **ON BRIEF:** J. Scott Sexton, Monica T. Monday, H. David Gibson, GENTRY LOCKE, Roanoke, Virginia, for Appellees/Cross-Appellants.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Knox Energy, LLC and Consol Energy, Inc. (collectively "Consol") brought this action seeking a declaratory judgment that a purported contract it signed with Gasco Drilling, Inc. ("Gasco") was not enforceable. The district court granted judgment as a matter of law in favor of Consol. Gasco appeals that order and several pre-trial rulings. We reverse the grant of judgment as a matter of law, but affirm in all other respects.

I.

A.

In 2008, Consol, a natural gas producer, and Gasco, a drilling company, entered into a drilling agreement that lasted for two years, or until Gasco completed its work. Under the contract, Consol agreed to pay a "standby" rate of $10,800 per day, per drilling rig, for time when Gasco was on site but not actively drilling. While drilling, Gasco received an even higher fee. Additionally, the 2008 agreement contained a special "take-or-pay" provision, which guaranteed that Gasco would make two rigs available for Consol whenever it requested work. Whether or not Gasco was on site, it provided that Consol would pay the standby rate for 328 days of each twelve-month period. In May 2010, the parties amended the agreement to

3

release one of the rigs from the contract.  The remaining rig completed its work, and the contract terminated, in July 2010.

The essential dispute in this case is whether Gasco and Consol reinstated that 2008 contract in 2011.  On June 6, 2011, Consol emailed Gasco a document titled "Addendum to Contract Purchase Order."  Clyde Ratliff, Gasco's CEO, signed the Addendum and returned it on June 14, 2011.  Consol returned the countersigned Addendum to Gasco on July 29, 2011.  The Addendum stated that Gasco and Consol "agree to modify the 'term' provision of the contract purchase order to read as follows:" that the new "term of this agreement shall be for one year from the date set forth above and shall be automatically extended for one year terms unless either party gives written notice" of termination at least thirty days before renewal.  The Addendum was "effective" on June 13, 2011.  The "contract purchase order" referenced in the Addendum was the 2008 drilling agreement, "PO No. 5600000439."

## B.

For a year after signing this Addendum, Consol did not ask Gasco to drill, and neither party communicated about the Addendum.  Then, in June 2012, Gasco sent Consol a $7,084,800 bill for 328 days of take-or-pay standby charges.  Contending that it had mistakenly signed the Addendum, Consol refused to pay.  Additionally, Consol filed this diversity action for

4

declaratory relief. In response, Gasco sent Consol a second $7,084,800 invoice as liquidated damages for early termination, and counter-sued for breach of contract.

After discovery, both parties moved for summary judgment. Consol argued in the alternative that, if the parties had reinstated the contract, it was in the same form as when it originally terminated -- with only one rig. The district court granted Consol partial summary judgment on this basis. Otherwise, the district court denied both parties' motions for summary judgment.

The court also denied two of Gasco's motions in limine. First, the court refused to bar Consol from introducing a privilege log of "the general subject matter or timing of communications between Gasco and its attorney." Second, the court allowed Consol to present parol evidence that it genuinely made a mistake when it signed the Addendum. The case proceeded to trial. At the conclusion of Gasco's evidence, Consol moved for judgment as a matter of law, which the court granted.

II.

A.

The principal issue before us is whether the district court erred in granting judgment as a matter of law. We review the district court's ruling de novo. Sales v. Grant, 158 F.3d 768,

5

775 (4th Cir. 1998). We "must draw all reasonable inferences in favor of [Gasco]," and "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000). We must reverse a grant of judgment as a matter of law if "reasonable minds could differ" on a verdict in Gasco's favor. Sales, 158 F.3d at 775.

Under Virginia law, a contract is not valid unless there is an "agreement or mutual assent" between the parties. Lucy v. Zehmer, 84 S.E.2d 516, 522 (Va. 1954). Objectively, if a party's "words and acts, judged by a reasonable standard, manifest an intention to agree, it is immaterial what may be the real but unexpressed state of [the party's] mind." Id. In Lucy, defendants Zehmer contended that a document purporting to sell their farm to the plaintiff, Lucy, had been a bluff. Id. at 517-20. The Supreme Court of Virginia enforced the contract because the parties' "conduct and words would warrant a reasonable person in believing that [they] intended a real agreement." Id. at 522. Virginia courts continue to look for outward "manifestation[s] of mutual assent." Wells v. Weston, 326 S.E.2d 672, 676 (Va. 1985); see also Falls Church v. Protestant Episcopal Church in the United States, 740 S.E.2d 530 (Va. 2013) (evaluating the expressions communicated between the parties).

6

B.

Consol's basic argument supporting grant of judgment as a matter of law is that "one cannot snap up an offer that is too good to be true," and Gasco could not have reasonably believed Consol intended to renew the 2008 contract. Consol Br. 41. If Gasco knew or should have known that Consol made a mistake, we agree there was no mutual assent. But Gasco presented sufficient evidence that, if credited, a reasonable jury could have found in its favor.

Gasco's case for contract formation included the Addendum and a copy of the 2008 drilling agreement. Gasco also introduced emails showing that Consol initiated the transaction, confirmed that the 2008 drilling agreement (referenced by number) was the contract referred to in the Addendum, confirmed Gasco's contact information, and returned the executed Addendum. The parties dispute whether those documents and actions carry any meaning.

First, in Consol's view, its mistake was obvious. Despite Gasco's decades-long relationship with Consol, Gasco's CEO Ratliff had never heard of the Consol employees who sent or signed the Addendum. In her email returning the executed Addendum, a Consol representative perfunctorily thanked Gasco "for [its] cooperation with this matter." And the Addendum, as sent to Gasco, did not include an effective date. But Ratliff

7

maintained he "never thought Consol made a mistake" and "didn't know who to call about the drilling." His secretary, who reads and sends his emails, informed him that Consol wanted to renew a contract. Ratliff testified that it was not odd to renew an expired contract, because "every contract [he had] ever had with Consol was always open for additional drilling down the road." He thought nothing of the unfamiliar names, because Consol had informed him that it "made a major change" and that "all contracts [would] be coming out of chain supply management."

Second, Consol argues that Gasco's behavior demonstrated its knowledge of the mistake, and points to the following evidence. Gasco bid on Consol's 2011 drilling in December 2010, and knew Consol rejected that bid and hired a different company. When Gasco received the Addendum, Ratliff consulted an attorney before signing it, although his usual practice was to make contract decisions alone. In September 2011, Ratliff met with Consol without mentioning the take-or-pay contract he maintains was in place. Moreover, Ratliff did not tell his employees or other executives about the contract. Finally, Gasco billed Consol after a whole year, rather than monthly. Gasco responds that Ratliff heard that the company that had won Consol's 2011 bid "was having lots of problems." Ratliff testified that he usually waited to tell his drilling team about a contract until he had a work order to drill. He said he did not follow up with

8

Consol about drilling because the people he knew "had moved on." Finally, Ratliff contended that he billed at the end of the year because that was Gasco's typical practice.

Third, Consol maintains that a take-or-pay contract was commercially unreasonable in 2011. Consol points to evidence that Ratliff knew that natural gas prices were at historic highs in 2008, when the original contract was signed, and had dropped dramatically by 2011. In fact, Gasco had only ever entered into two take-or-pay contracts -- both in 2008 -- and almost all of Gasco's rigs were idle in 2011. But Ratliff claimed that he had a different "view of the market." Ratliff testified that in his view Consol might have engaged in gas hedging to lock in higher prices years in advance. Additionally, Consol might have had lease obligations requiring it to drill despite the lower prices. Gasco introduced evidence that in its SEC filings, Consol admitted that it sometimes attempted to mitigate risk "by entering into 'take or pay' contracts," even though it "may have to pay for services that [it] did not use."

Given this mix in the evidence, we cannot conclude that, without weighing the evidence or making credibility determinations, no reasonable jury could have rejected Consol's

contentions and instead found mutual assent. Consequently, we reverse the grant of judgment as a matter of law to Consol.*

III.

Gasco next appeals two of the district court's rulings on partial summary judgment. As with judgment as a matter of law, we review summary judgment de novo to determine "whether there exist any genuine issues of material fact." Atalla v. Abdul-Baki, 976 F.2d 189, 192 (4th Cir. 1992).

First, Gasco appeals the district court's ruling that the 2008 agreement, if reinstated, included only one rig. Gasco claims that "[a] jury could reasonably infer that, when the parties further amended the term in 2011, they replaced all prior term amendments." Gasco Br. 51. But the Addendum states that, besides modifying the "term" provision, "all other provisions of the contract purchase order shall remain in full force and effect." The rig amendment was one of the provisions in effect that remained unchanged. Unlike the appellant in Midlothian Coal Mining Co. v. Finney, 59 Va. 304 (1868), on which Gasco relies, Gasco had ample opportunity for discovery.

---

* Because we find disputed issues of material fact sufficient for this case to proceed to a factfinder, we reject Consol's contention that it was entitled to judgment on the pleadings.

10

Gasco did not produce sufficient evidence to support its contrary interpretation.

Second, Gasco appeals the court's refusal to foreclose Consol from arguing unilateral mistake plus fraud as an affirmative defense. Gasco does not dispute the fact that fraud is an affirmative defense to contract enforceability. See Spence v. Griffin, 372 S.E.2d 595, 598 (Va. 1998) (defining fraud). Rather, Gasco argues that "[a]s a matter of law, Gasco did not commit fraud" because Consol's own "system's error" led it to sign the Addendum. Gasco Reply Br. 42-43. But considering the above evidence in the light most favorable to Consol, we cannot conclude that the district court erred in refusing to grant summary judgment on this claim to Gasco.

IV.

Finally, Gasco challenges the district court's denial of two motions in limine. We review the denial of a motion in limine for abuse of discretion. Projects Mgmt. Co. v. DynCorp Int'l LLC, 734 F.3d 366, 373 (4th Cir. 2013).

First, Gasco argues that the court should have excluded parol evidence of Consol's mistake as "irrelevant, confusing, and misleading." But Consol had to present some evidence of a mistake in order to prove that its mistake was obvious to Gasco. Furthermore, both parties proposed essentially the same jury

11

instructions, that "[i]f a person's words or actions warrant a reasonable person in believing that he intended real agreement, his contrary, but unexpressed, state of mind is immaterial." Thus the jury would have been instructed that its decision on mutual assent must rest on the objective circumstances. The court did not abuse discretion in allowing this evidence.

Nor did the court abuse discretion in allowing Consol to introduce Gasco's privilege log. Gasco challenges the admission of this log only on the grounds that it was irrelevant and prejudicial. But as Consol argues, the log rebuts Gasco's narrative that there was nothing unusual about the Addendum that would have alerted it to Consol's mistake.

V.

For the forgoing reasons, the judgment of the district court is

<u>AFFIRMED IN PART,</u>
<u>REVERSED IN PART,</u>
<u>AND REMANDED</u>.

12